(No. 17012.—Reversed and remanded.)
Samuel V. McGee *et al.* Appellees, *vs.* W. M. Vandeventer *et al.* Appellants.

*Opinion filed June 22, 1927—Rehearing denied October 5, 1927.*

1. Wills—*when power of appointment is exercised by will.* A power of appointment given the testator's widow, to be executed "in her lifetime" in favor of charitable and religious purposes, may be exercised by will as well as by deed, but where the widow executes two wills, the first, being ambulatory and revoked by the second, does not exercise the power although it purports to do so and appoints trustees for that purpose; but the second will, although likewise ambulatory until the testatrix's death, will take effect at that time and will be regarded as a proper exercise of the power in her lifetime, where it contains provisions for the purpose.

2. Same—*when a bequest to charity will lapse into residuary clause.* Where a testator gives the income from his estate to a designated charity, the amount to be designated by his widow, and provides in a subsequent clause that after the death of the widow "all the rest and residue" of the estate shall be used for such charitable and religious purposes as the widow may direct in her lifetime, if the designated charity is not in existence and does not come into existence in the lifetime of the widow the bequest will lapse into the residuary clause.

3. Same—*renunciation by widow does not render testator's estate intestate.* A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate, and a renunciation by the widow is merely a rejection of the provision made for her and

does not destroy any other provision of the will nor render any part of the estate intestate.

4. SAME—*renunciation by widow does not affect power of appointment.* A renunciation by the testator's widow in the form prescribed by section 13 of the Dower act has no effect upon a power of appointment given her in the will, as a widow may act as executrix or trustee of a trust or donee of a power in which she has no beneficial interest unless it appears by the will that the execution of the trust or exercise of the power is dependent on her acceptance of the provisions of the will for her own benefit.

5. SAME—*a probate proceeding does not adjudicate property rights.* Although since the act of 1897 the proceeding to probate a will is regarded as a proceeding *inter partes,* in which notice to the heirs-at-law, devisees and legatees is a prerequisite to the exercise of jurisdiction, it is not an adversary proceeding in which rights are adjudicated, but its effect is only to establish *prima facie* the validity of the will until the expiration of one year, during which any person interested may contest its validity.

6. SAME—*only heirs-at-law, devisees and legatees are required to be notified of probate proceeding.* The heirs-at-law, devisees and legatees are the only persons required to be notified of the proceeding to probate a will and as to them notice is jurisdictional, and the statutory provision for publication and notice by the court to parties in interest in a case where there is no petition for probate refers back to the earlier part of the statute, and the parties in interest referred to are the heirs, devisees and legatees. (*Mosser v. Flake,* 258 Ill. 233, and *Conzet v. Hibben,* 272 id. 508, distinguished.)

7. SAME—*heirs of donor of power are not entitled to notice of probate of will exercising the power.* The donor of property to charitable uses and his heirs, in whom is the possibility of reverter, may appear in court to restrain the diversion of the property from the charitable uses for which it was given; but where the gift is in the form of a power of appointment in favor of such charities as the donee of the power may designate, the heirs of the donor are not entitled to notice of the probate of the will of the donee exercising the power, as their interest is at best no more than a remote contingent interest.

8. STATUTES—*proviso is to limit and qualify statute rather than enlarge it.* The function of a proviso to a statute is ordinarily to limit and qualify the language of the statute, and it is contrary to its nature to enlarge or extend the act of which it is a part.

9. CHARITIES—*gift to charity will not fail because of abuse of trust.* Where no power of revocation is reserved in a gift to charity the abuse of the trust does not cause it to fail or the prop-

erty to revert, but the remedy is by bill in equity to compel an observance of the terms of the trust; and where the gift is to public charity, the Attorney General or State's attorney, representing the public, is charged with the duty of preventing a breach of the trust or of requiring a restoration of the trust fund where it has been diverted.

Appeal from the Circuit Court of McDonough county; the Hon. George C. Hillyer, Judge, presiding.

Keefe, Baxter & Miller, (Wilton M. Vandeventer, *pro se,*) for appellants.

Ira J. O'Harra, and O'Harra, O'Harra & O'Harra, for appellees.

Mr. Justice Dunn delivered the opinion of the court:

The circuit court of McDonough county overruled a demurrer to a third amended and supplemental bill filed by the heirs of Thomas J. Caldwell, who died on February 7, 1906, leaving a will, for the partition of certain real estate which he had owned in his lifetime but which, as was alleged, he had not disposed of by his will. Some of the defendants who had demurred elected to stand by their demurrer, others filed answers, and the court entered a default against the defendants declining to answer and a decree of partition against them. They have appealed from the decree.

The bill prayed for a construction of the will of the testator and a decree determining that the will of Elsie Caldwell, the testator's widow, purporting to exercise a power of appointment created by the will of Thomas J. Caldwell and its probate be declared void, that the real estate of Caldwell be found to be intestate property and that partition of it be made among the complainants, his heirs-at-law. His will was construed in the case of *Welch* v. *Caldwell,* 226 Ill. 488, in which it was held that the will created charitable trusts which were capable of enforcement and created a valid power in Elsie Caldwell as trustee to ap-

point the beneficiaries of the trust and the amounts and purposes for which the estate should be used. The question to be determined in this case is, therefore, whether the will of Elsie Caldwell was a valid execution of the power of appointment. If it was, then the beneficiaries named in her will, who together with the executor of her will are the appellants, were entitled to the property, the complainants have no interest therein, and the demurrer to their bill should have been sustained.

The will of Thomas J. Caldwell, executed on April 22, 1903, after providing for the payment of his debts and funeral expenses, some minor bequests and certain provision for his wife, continued as follows:

"*Eighth*—A part of the income of my estate over and above the bequests hereinbefore named, including the annual allowance set apart to my wife, I direct to be used for charitable purposes, the McDonough County Holiness Association to receive a portion of said bequest, the amount and purposes for which said bequests is to be used, I leave to the discretion of my wife, Elsie Caldwell.

"*Ninth*—After the death of my wife, Elsie Caldwell, all the rest and residue of my estate I desire shall be used for charitable and religious purposes, my said wife to direct in her lifetime in what amount and for what specific purposes said estate shall be used.

"*Tenth*—I hereby authorize my executor hereinafter named to make and deliver all deeds or leases necessary for the carrying out of the provisions of this will and for the carrying into effect any of the contracts for deeds that may be incompleted at the time of my death."

The testator's widow, Elsie Caldwell, was nominated as executrix. Letters testamentary were issued to her upon probate of the will, and within a year the widow renounced the benefit of the provision made for her by the will and elected to take her statutory rights in the estate, which consisted of 378 acres of land, a residence occupied as a home-

stead in the city of Macomb, and personal property exceeding $40,000 in value. Of the land, 124.3 acres were set off to her as her individual property and 50.7 acres were assigned to her as trustee under her husband's will. She converted a part of the personal assets of the estate into money and purchased 320 acres of other land, taking the title in her own name, and she collected the income from these lands. She delivered certain notes and mortgages to Wilton M. Vandeventer, and also conveyed to him by warranty deed part of the real estate owned by her husband at the time of his death, together with the lands purchased by her with funds of the estate. Subsequently Vandeventer conveyed certain real estate to Elsie V. Caldwell. Copies of these deeds are attached to the third amended and supplemental bill as exhibits, and the abstract shows that the quit-claim deed was a re-conveyance to Mrs. Caldwell of all the real estate which she had conveyed to Vandeventer by her warranty deed. The bill, after alleging the execution of these conveyances, contains the allegation that "said Wilton M. Vandeventer did not re-convey by said last mentioned deed, or by any other deed, all of the real estate described in the deed to him from Elsie V. Caldwell." But this allegation is directly contrary to the face of the deeds attached to the bill as exhibits, and in this contradictory state of the pleadings the averment must be taken most strongly against the pleader, and, being inconsistent with the exhibits referred to, must be disregarded.

The bill alleges that Don F. Pennywitt claims that Elsie Caldwell exercised the power given her by her husband's will and appointed Pennywitt and Albert Eaves and Stephen E. Blackstone trustees to carry out the trusts, but the complainants state that Mrs. Caldwell never executed any instrument appointing them, or either of them, trustees, and no such instrument was ever delivered or ever passed beyond the control of Mrs. Caldwell but was destroyed by her, or someone for her, before delivery, and that it never

did have any force or effect and she never exercised during her life the power given her by her husband's will, and Pennywitt,. who claims as surviving trustee, is for that reason made a defendant to the bill. It is further alleged that on January 12, 1915, Mrs. Caldwell signed two instruments, copies of which are attached to the bill, one purporting to be her will devising to trustees all the property that she might own or have an interest in at the time of her death as well as the property of every kind and description of Thomas J. Caldwell, deceased, to be held, managed and controlled for the purposes of a trust to be known as the Thomas J. Caldwell Charities, naming the charities for which the property should be used and the amount for each charity. The other instrument purported to be a deed to Stephen Gumbart and others of the same real estate in trust for the same purposes as provided for in the will, and it is further alleged that both instruments were left by Mrs. Caldwell with her attorney, to be retained until after her death; that she died on January 17, 1924, with the instruments still in the possession of the attorney, and after her death the will was filed with the county clerk of McDonough county but had never been admitted to probate, and the deed was filed for record in the recorder's office of McDonough county; that such deed was never delivered so as to become effective and did not pass title to any property or operate as an exercise of the power of appointment contained in the will of Caldwell but was of no force or effect. All persons claiming to have been appointed trustees by the supposed will and deed dated January 12, 1915, were made defendants to the bill. It is further alleged that on July 19, 1921, Mrs. Caldwell executed an instrument in writing purporting to be her will, which after her death was on February 26, 1924, admitted to probate in the county court of St. Clair county; that Wilton M. Vandeventer, named in the will as executor, qualified and is now acting as such executor; that the will does not have

the effect of exercising the power of appointment given to Mrs. Caldwell by her husband, for the reason that she did not exercise the power during her lifetime as directed in her husband's will but attempted to do so by a will, which could only take effect after her death. This will revoked the will of January 12, 1915, made several bequests and devised the residue of the testatrix's property to her nephew, Vandeventer, and, proceeding to exercise the power of appointment conferred by the will of Caldwell, devised various sums to certain charitable organizations named and the residue of the estate of her deceased husband to the East St. Louis Council of Boy Scouts of America.

So far as the Pennywitt deed is concerned, the demurrer admitted it was never delivered, and the same is true of the Gumbart deed. The will of January 12, 1915, was not a valid appointment for the reason that it never took effect as a will. It was not admitted to probate but was revoked by the later will, which was admitted to probate. The execution of the will naming the charitable purposes among which the property was to be divided and the amount to be received by each was not an execution of the power, because the will was ambulatory during the life of the testatrix and could become effective only at the instant of her death, being subject to be revoked in the meantime, and in the meantime it was revoked. *Bradford* v. *Andrew,* 308 Ill. 458.

The testator disposed of the whole of his estate, leaving no part of it to descend to his heirs. It was held in the case of *Welch* v. *Caldwell, supra,* in which Caldwell's will was construed, that a trust was created by the will; that Elsie V. Caldwell was charged with the duties of trustee, with power to make and deliver all deeds and leases necessary to carry out the provisions of the will and was invested with such estate as was necessary for that purpose; that she was invested with the control of the trust estate

during her life; that the income over and above the bequests was all devoted to charitable purposes, and any part of the income which should not be so used in the lifetime of the widow would fall into the residue and after her death go to such purposes; that the McDonough County Holiness Association was entitled to all of the income mentioned in paragraph 8 of the will until the death of Mrs. Caldwell unless she should select other charitable purposes which should share in the income. Since she made no such selection and the McDonough County Holiness Association did not exist at the time of Caldwell's death and there has not since been any such organization and there is no successor to it, the gift mentioned in the eighth paragraph of the will lapsed, and the income of the estate which would otherwise have passed under the eighth paragraph of the will became, as was adjudged in the previous case, a part of the rest and residue of the estate mentioned in the ninth paragraph.

The appellees' contention that Mrs. Caldwell's renunciation of the will precluded her from acting as executrix, deprived her of the power of appointment under the will and vested the title and right of possession of the testator's property in his heirs, the appellees, is without foundation. The renunciation was in the form prescribed by section 13 of the Dower act and had no effect on the power. As required by that section, it renounced the benefit of any provision of the will for her benefit and elected to take instead her dower and legal share in the estate. A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate. (*Blatchford* v. *Newberry*, 99 Ill. 11; *Carper* v. *Crowl*, 149 id. 465; *ReQua* v. *Graham*, 187 id. 67; *Dunshee* v. *Dunshee*, 251 id. 405.) Her renunciation was a rejection of the provision made for her, and its effect was to obliterate from the will such provision, leaving the other provisions operative on the part of the estate not

including her statutory interest. The will is not destroyed nor is any part of the estate rendered intestate. The widow may act as executrix or trustee of a trust or donee of a power in which she has no beneficial interest unless it appears by the will that the execution of the trust or exercise of the power is dependent on her acceptance of the provisions of the will for her own benefit. (*Hawley* v. *James,* 5 Paige's Ch. 318.) This question was virtually decided in the case of *Welch* v. *Caldwell, supra,* in which it was held that a trust was created and Mrs. Caldwell was invested with the control of the trust estate during her lifetime to be applied to the purposes designated by the testator, and the power of appointment, to be exercised during her lifetime, of the rest and residue of the estate to charitable uses after her death, and that if the power should be exercised as provided in the will the trust would be administered and the estate disposed of according to the will of the testator. The court expressly declined to decide whether the court could enforce the trust created by the ninth paragraph of the will and select the objects of the charity in default of the exercise of the power given to the widow. This last question is not presented for decision now, but the question which is presented is that which was stated in the second paragraph of this opinion, Was the will of Mrs. Caldwell a valid execution of the power of appointment?

The will dated July 19, 1921, was a valid exercise by Mrs. Caldwell of the power of appointment and a direction in her lifetime in what amount and for what specific purposes the estate should be used, as authorized by the ninth paragraph of Thomas J. Caldwell's will. She might have made the appointment by a deed or other formal or informal instrument in writing giving such direction, but there is no reason why the direction might not be given in a will. It is true, the estates could not take effect in the charities in favor of whom the direction was made until the testatrix was dead, but she directed specifically the

326—28

amount to be used and for what purposes. She directed in her lifetime by her will, which took effect the instant she ceased to live, in what amount and for what specific purposes the estate should be used. She had given the direction when she executed her will in her lifetime. It is true that the expression of her purpose was ambulatory and of no effect up to the last minute of her life, but the instant her life expired the will and the declaration of trust became effective. "The will, in contemplation of law, is in effect at the instant of the death of the testator and is to be considered as if it bore date then." (*Dickinson* v. *Belden,* 268 Ill. 105.) Since Mrs. Caldwell had the whole of her life in which to declare the trust, her will, which took effect at the instant of her life's close, was within the power given her by her husband's will. The power to appoint in the lifetime of the donee of the power may be as well exercised by a will as by a deed.

It was alleged in the bill and is contended in argument that the will was not a valid appointment because the testatrix did not have mental capacity to execute the power, and the probate of the will was invalid because the appellees had no notice of the application. We have seen that the will of Thomas J. Caldwell in its ninth paragraph authorized the appointment to be made by Mrs. Caldwell in her lifetime, either by deed or will. The probate of the will is declared by the statute forever binding and conclusive on all parties concerned, but it is contended that, as the appellees had no notice of the petition for probate, the county court of St. Clair county had no jurisdiction of them and the order admitting the will to probate is void as to them. Previous to the statute of 1897 in relation to the probate of wills (Laws of 1897, p. 304,) the proceeding to probate a will was regarded as in the nature of a proceeding *in rem,* it was *ex parte,* and no petition or notice was required. (*Claussenius* v. *Claussenius,* 179 Ill. 545.) The statute made notice to the heirs-at-law and legatees a prerequisite

to the exercise of jurisdiction, and the proceeding has since been held to be *inter partes.* (*Schofield* v. *Thomas,* 231 Ill. 114; *Hitchcock* v. *Green,* 235 id. 298; *Mosser* v. *Flake,* 258 id. 233.) It is not a strictly adversary proceeding in which rights are adjudicated, for the reason that the heirs-at-law and legatees, though required to be notified, have no right to introduce evidence, no issue is made between those who assert and those who deny the validity of the will, and the purpose of the proceeding is merely to admit the instrument to probate as a will, leaving anyone who questions its validity to contest it. (*Pratt* v. *Hawley,* 297 Ill. 244.) The order admitting a will to probate is a basis for issuing letters testamentary or of administration with the will annexed and for proceeding with the administration of the 'estate in accordance with the will, but its effect is only to establish *prima facie* the validity of the will until the expiration of a year, during which any person interested may contest its validity. The court of probate has no jurisdiction over heirs, legatees and devisees who have had no notice of the proceeding to probate a will, and an order admitting a will to probate without such notice is a nullity as to such parties who have no notice. (*Walker* v. *Cook,* 294 Ill. 294; *Mosser* v. *Flake, supra.*) Since the proceeding does not adjudicate property rights, notice of it need not be given merely because it is *inter partes,* (*Pratt* v. *Hawley, supra,*) except to those persons whom the statute requires to be notified, as to whom the notice is therefore jurisdictional. The statute requires the petition for probate to state the name and place of residence of each of the heirs-at-law, legatees and devisees only, and notice to be given to the heirs-at-law, legatees and devisees only. *Gorden* v. *Gorden,* 283 Ill. 182.

The appellees rely upon the case of· *Mosser* v. *Flake, supra,* from which they quote the following language used in the opinion: "The classes mentioned in the body of the act are heirs-at-law and legatees, and the latter is a gen-

eral term, including devisees. (*Den* v. *Crawford,* 8 N. J. L.
90.) In the proviso the words previously used are con-
strued as including all parties in interest, and certainly the
trustees of Hedding College and the college were parties
in interest." It is necessary to consider the facts of the
case in which this language was used. It was unnecessary
to the decision, which was in no way based upon it. The
will, the admission of which to probate was the subject of
the litigation, consisted of an original will and three codi-
cils. The trustees of Hedding College, for the use of the
college, were legatees under the first will and codicil of a
substantial part of the estate. The second codicil revoked
these provisions and the third codicil did not refer to the
trustees or the college. The only question was whether the
trustees were entitled to notice of the proceeding to probate
the will, and it was in the consideration of this question
that the language quoted was used, the claim of the pro-
ponents of the will being that the trustees were not parties
in interest because the provisions of the original will and
first codicil were revoked by the second codicil. Being lega-
tees under the original will and first codicil, they were, of
course, interested in having them admitted to probate, and
in discussing this question it was said that they were also
interested in the later codicils and had a right to dispute
the testamentary capacity of the testator at the time they
were made as well as the due execution of them, and their
right was equal to that of an heir whose interest is taken
away by a will, and was of exactly the same nature. "If
all the instruments were proven they would constitute but
one will, but the court could only exercise the judicial
power to hear and determine that question by the filing of
a petition and notice having been given as required by the
statute. The question involved being one of jurisdiction,
merely, the parties entitled to notice were to be determined
from the instruments when presented for probate, and no
effect whatever can be given to the finding of the court that

all the several instruments were executed according to law and were valid. The determination of the jurisdictional question was necessary to the exercise of the judicial power to decide whether the several instruments constituted a valid will, and in determining that question there could be no presumption that the codicils were properly executed or that the testator had legal capacity to make them. It would be just as reasonable to say that an heir is not entitled to notice because the will cuts him off, as to say that the trustees of the college were not entitled to notice because a codicil took away their devise."

It is apparent from a consideration of all the context that the interest which the court referred to in the *Mosser case, supra,* was the direct interest of the trustees as legatees under the will, and not a collateral interest which might be in some way indirectly affected by the operation of the will. It is also manifest that the proviso mentioned in the opinion did not enlarge the provisions of the act with reference to the persons whose names and places of residence were required to be stated in the petition and who were required to be notified. The function of a proviso is ordinarily to limit and qualify the language of the statute, and it is contrary to its nature to enlarge or extend the act of which it is a part. The act in question provides that before any will shall be admitted to probate the person desiring to have the same probated shall file a petition in the probate court of the proper county, etc. This language is universal. The object of the proviso was to except from the general requirement of a petition the case of a will deposited in the court for the probate of which no petition has been filed. In such case the county court is required to probate the will without a petition, but since there is no provision for any statement of the names of the heirs-at-law and legatees and their places of residence, the court is required to cause publication and notice of the intention to probate the will to be given to the parties in interest as

to the court may seem proper. This proviso is not shown by the bill to have any application in this case, inasmuch as the bill does not negative the fact that a petition was filed and notice given to the heirs and legatees of the testatrix all in strict compliance with the statute. The language of the requirement of publication and notice to the parties in interest as to the court may seem proper in the excepted case mentioned in the proviso, refers back to the earlier part of the statute, and the parties in interest referred to are those mentioned there,—the heirs and legatees. Another provision was added in 1909 in the nature of an exception to the requirement of notice, that if all the heirs and legatees of the testator shall personally appear in court, or, in case they are of legal age and under no disability, shall file in writing their appearance and waiver of notice, then the will may be admitted to probate without notice. In the body of the act and in both provisos the persons to whom notice must be given are the heirs and legatees. The appellees had no direct interest in the will of Elsie Caldwell. They were not her heirs or legatees, and their only interest was remote, indirect and contingent,—a possibility that the devise of Thomas J. Caldwell to charitable purposes might fail through the failure of Mrs. Caldwell to name the charities which should take.

The appellees also rely upon the case of *Conzet* v. *Hibben, 272* Ill. 508. In that case Charles Conzet died in 1912, leaving a widow and five brothers and sisters as his heirs. His will, dated February 21, 1896, giving all his property to his widow, was admitted to probate. An administrator with the will annexed was appointed, his final account was filed and approved and he was discharged. Louisa Conzet, the widow, died in 1914, and her will was admitted to probate. On August 13, 1915, a petition was filed for the probate of a will of Charles Conzet dated June 18, 1907, by which his widow was given an estate for life in his property with remainder to the testator's brothers and sisters. On

the hearing of this petition Louisa Conzet's executors, who were engaged in the settlement of her estate, appeared, were made parties and resisted the probate of the will. Probate was denied, and it was held that it was not improper to allow them to be made parties. The court held that this proceeding necessarily involved more than the mere probate of the second will; that it involved also the revocation of the order admitting the former will to probate, and that the proper practice in such case was to include with the application for probate of the later will an application for an order vacating the probate of the previous will. To the latter relief the executors of the previous will, and the devisees under it, were necessary parties.

The appellees have no present interest or estate in the property which Thomas J. Caldwell owned in his lifetime and devised by his will. They have at best no more than a remote contingent interest—the mere possibility of reverter, which always exists in law in case of charitable bequests to corporations. (*Mott* v. *Danville Seminary,* 129 Ill. 403; *Danville Seminary* v. *Mott,* 136 id. 289.) The donor of property to charitable uses has a standing to appear in court to restrain the diversion of the property from the charitable uses for which it was given. (*Green* v. *Old People's Home,* 269 Ill. 134; *Mills* v. *Davison,* 54 N. J. Eq. 659; *Chase* v. *Dickey,* 212 Mass. 553.) This right of the donor to require the application of the property to the purpose for which it was given exists also in the heir, to whom the possibility of reverter passes upon the death of the donor. (*Presbyterian Church* v. *Venable,* 159 Ill. 215; *Miller* v. *Riddle,* 227 id. 53.) The third amended and supplemental bill, which is the subject of this review, contains no specific prayer in regard to the application of the property to charitable and religious purposes, but it contains a prayer for such order with reference to the distribution of the estate of Thomas J. Caldwell, deceased, as shall appear right and proper and as equity may require, and a prayer for

general relief. It also alleges that in the event it should be held that the heirs of Caldwell are not entitled to either the income or the profits of the estate, or any part of it, then the heirs are entitled to see that the trust created by the will is properly administered and is not depleted or squandered and a determination of the rights of the respective parties under his will and the instrument executed by Mrs. Caldwell, and to have Vandeventer, individually and as executor, account, so that the appellees may see that the trust is properly administered.

This suit was begun by an original bill filed to the January term, 1918, of the circuit court of McDonough county, six years before the death of Mrs. Caldwell, which occurred on January 17, 1924, and its object was not to enforce the application of the property to the purposes of the trust but to destroy the trust and obtain partition of the property among the complainants. An amended and supplemental bill was filed September 1, 1923, and another supplemental bill on September 1, 1924. At the May term, 1925, a third amended and supplemental bill was filed. None of the previous bills appear in the abstract. It does not appear that the original bill, or either the first or second amended and supplemental bill, contained any allegation which would justify the granting of any relief in regard to the acts or failure to act of Mrs. Caldwell under the ninth paragraph of the will of Thomas J. Caldwell. Before the death of Mrs. Caldwell, on January 17, 1924, there was no basis for any relief as to the provisions of the ninth paragraph of her husband's will. The residue of his estate, the whole income of which was applicable during the life of his wife to the charitable purposes mentioned in the eighth paragraph of his will, was not applicable to the purposes of the trust created by the ninth paragraph until after his widow's death. The will has been construed by this court and no new question requiring construction is presented by the bill in this case. The bill con-

tains no allegation of any occurrence subsequent to the death of Mrs. Caldwell which can constitute a basis for any relief concerning a diversion of the property from the purposes of the trust. The theory of the bill is that by the acts or omissions of Mrs. Caldwell the trust was destroyed, that she and those claiming under her are estopped to allege the continued existence of the trust, and that therefore the property has reverted to the appellees. There is no basis for such a claim. The gift to the charitable corporations named in the will of Mrs. Caldwell was made by the will of Thomas J. Caldwell and not by that of Mrs. Caldwell. She did not make the appointment out of her own estate. She simply had the power to designate, and did designate, what charities should take as donees under her husband's will, herself having no interest in the property so appointed. Had there been any estoppel, the appellees having placed no reliance on her acts and not having been misled in any way could not avail of it. In general, where no power of revocation is reserved in a gift to charity the abuse of the trust does not cause it to fail or the property to revert, but the remedy is by bill in equity to compel an observance of the terms of the trust. (*Green v. Old People's Home, supra; Mills v. Davison, supra; Strong v. Doty,* 32 Wis. 381.) The Attorney General or State's attorney, representing the public, is charged with the duty of preventing a breach of a trust for a public charity or of requiring a restoration of a trust fund which has been diverted, (*People v. Braucher,* 258 Ill. 604; *Attorney General v. Illinois Agricultural College,* 85 id. 516; *Hunt v. Fowler,* 121 id. 269; *Attorney General v. Newberry Library,* 150 id. 229;) though, as we have seen, the donor or his heirs have the right to restrain the diversion of property given to charity from the charitable uses for which it was given.

The decree is reversed and the cause remanded, with directions to sustain the demurrer.

*Reversed and remanded, with directions.*