**Grange Estate**

Before Klein, A. J., Shoyer, Gutowicz, Pawelec and Silverstein, JJ.

SHOYER, J., December 14, 1973.—Charles E. Grange died May 13, 1927, leaving a will dated March

4, 1920, and a codicil dated November 5, 1923, a copy of which is attached, whereby he gave his residuary estate to the accountant, in trust, to pay the income, after the death of his wife, Annie C. Grange who died November 25, 1931, after filing an election to take against her husband's will, to his two children, William G. Grange, who died October 12, 1940, and Laura G. Lister, for their lives, with remainder upon their respective deaths to their issue, and if the son should die without leaving issue but leaving a wife, which he did, the son should have power to appoint by will $3,000 per year out of income to his wife for her life or until her remarriage. William G. Grange did so appoint and his widow, Marion M. Grange, died January 21, 1955. The testator directed that the balance of the income from the residuary estate be paid to his daughter, Laura, and upon the death of both of his children without leaving issue, his residuary estate should be distributed, $200,000 to his trustee to pay the income to his nieces, Jessie Roman and Elise Robbins, with remainder on their respective deaths as provided with respect to the balance of his residuary estate, i.e., $25,000 to his trustee to pay the income to Episcopal Church of the Incarnation for the maintenance of the Church but, if it should cease to exist, the income is to be paid to the Bishop of the Protestant Episcopal Church of the Diocese of Pennsylvania; $25,000 to his trustee to pay the income to St. Luke's Hospital toward its maintenance, but if it should cease to exist, the income is to be paid to Episcopal Hospital; $25,000 to his trustee to pay the income to The Children's Homeopathic Hospital towards its maintenance; $100,000 to his trustee to pay the income to the Masonic Home of Pennsylvania, Broad and Ontario Streets, Philadelphia, toward its maintenance. He provided:

" . . . balance of my said residuary estate, I direct be paid and distributed unto such eleemosynary charitable or educational institutions as my beloved wife, Annie C. Grange, may by last will in writing direct and appoint, and in default of such appointment, then as my son, William G. Grange, may by his last will and testament direct and appoint, and in default of such appointment then as my said daughter, Laura G. Lister, may by her last will and testament direct and appoint, and in default of appointment by any of the above named persons, I direct that said balance of my residuary estate be paid and distributed unto the trustee, for the charitable institutions hereinbefore named by me in equal parts, share and share alike, each portion to be held upon the same trusts as are herein set forth for such charitable institutions."

The fund being here accounted for was awarded to the accountant by the adjudication of Bolger, J., dated January 6, 1949.

This account was filed because testator's daughter died on February 18, 1972. She left no issue. She left a will upon which letters testamentary were granted to Louise J. Young and Provident National Bank, executors.

Jessie Roman and Elise Robbins, who were to receive the income from a $200,000 trust during their lives, died April 2, 1964, and September 14, 1944, respectively.

Pursuant to a merger which took place in 1942, the Episcopal Church of the Incarnation is now known as Grace Church & The Incarnation, located at East Venango and Edgemont Streets, Philadelphia.

St. Luke's Hospital, formerly of Broad and Wingohocking Streets, is now located at 8th Street and Girard Avenue, Philadelphia, by merger which took place in

1927, and is known as St. Luke's and Children's Medical Center.

The Children's Homeopathic Hospital, Franklin and Thompson ̀ Streets, is by the merger in 1927, known as St. Luke's and Children's Medical Center.

Testator's wife, Annie C. Grange, who, as noted earlier, died November 25, 1931, left a will dated October 11, 1927, which was probated in Philadelphia on December 4, 1931. By her will, a copy of which is attached, she expressly referred to her power of appointment under the will of her husband, to appoint the balance of the residuary estate and directed that

" . . . said balance of his residuary estate be distributed and paid unto Philadelphia Home for Incurables, now located at Forty eighth Street and Woodland Avenue, Philadelphia Home of the Merciful Saviour for Crippled Children, now located at 4400 Baltimore Avenue, Philadelphia, Hospital of the University of Pennsylvania, now located at Thirty-fourth and Spruce Streets, Philadelphia, Hahnemann Hospital, now located at Fifteenth Street above Race, Philadelphia, and the Bryn Mawr Hospital, now located at Bryn Mawr, Pennsylvania, in equal parts, share and share alike, absolutely."

Testator's son, William, as noted before, left a will exercising his limited power of appointment of income to his wife, but did not exercise his power of appointment over the balance of his father's residuary estate.

Testator's daughter, Laura, by her will, expressly referred to the power given her by her father's will and appointed two-fifths thereof to the Home of the Merciful Saviour for Crippled Children, two-fifths to the Bryn Mawr Hospital and one-fifth to St. Mary's Episcopal Church.

The statement of proposed distribution and the notice of audit which counsel for the accountant sent to the parties in interest recite, inter alia, the election by testator's widow to take against his will and suggest that the remainder of testator's residuary estate, after setting aside the pecuniary trusts, be awarded in five equal shares to the five charities appointed by the will of testator's widow rather than to the charities appointed by the will of testator's daughter, Laura.

Counsel for the accountant has submitted a memorandum of law in support of its position.

Attached hereto is a copy of the notice to the Attorney General as parens patriae of gifts to charities under Rule *5.5 and the clearance certificate executed by James W. Sutton, Jr., Assistant Attorney General.

The trustees of the University of Pennsylvania, for the benefit of the Hospital of the University of Pennsylvania, through their counsel, J. Horace Churchman, Esq., have filed a brief supporting the position of the accountant. St. Mary's Episcopal Church, being one of the charities appointed by the will of Laura G. Lister, has filed a brief in opposition to the accountant's view through their counsel, Walter Y. Howson, Esq., and Otis W. Erisman, Esq.

It should be noted that in her formal election filed with the court, Mrs. Grange did not specifically, nor by implication, release or disclaim the limited power of appointment conferred on her by her husband's will. She stated in writing that, "I . . . do hereby elect . . . to take against the said Will and Testament of my said husband, dated the 4th day of March, 1920 and the said Codicil thereto, dated the 5th day of November, 1923, and to receive that portion of his estate to which, as Widow aforesaid, I am entitled under and by virtue of the laws of the Commonwealth of Pennsylvania and of any other State or Country,

which may determine the distribution of the estate of my said husband."

It is clear that the purpose of the election statutes in Pennsylvania has always been to insure that a surviving spouse could receive a certain portion of property regardless of any provision of a deceased spouse's will. Thus, the original election statute in Pennsylvania was designed to prevent a husband from depriving his widow of her dower rights. The Act of 1833, P. L. 249, sec. 11, provided:

" [a] devise or bequest by a husband to his wife of any portion of his estate or property, shall be deemed and taken to be in lieu and bar of her dower in the estate of such testator, in like manner as if it were so expressed in the will, unless such testator shall in his will declare otherwise: Provided, That nothing herein contained shall deprive the widow of her choice either of dower, or of the estate or property so devised or bequeathed."

The Act of 1869, P. L. 77, sec. 1, provided that the electing widow's property should be measured by the intestate laws rather than by common-law dower. The Wills Act of 1917, P. L. 403, sec. 23(a), 20 PS §261, granted the right of election to husband and wife equally, stating that "such surviving spouse shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate." This was the statute in force when the will was executed and when testator died.

There is a remarkable dearth of authority on the question here at issue, not only in Pennsylvania but also in other States. To the authorities researched and cited by counsel, the auditing judge has been able to add no authorities of his own. 38 A.L.R. 2d 977 (1954), notes that: "Whether a surviving spouse's

election to take against the will of the deceased spouse extinguishes a power of appointment given by the will to the surviving spouse is a question that has seldom arisen."

Briefs filed by the accountant and the University Hospital emphasize that an election to take against the will has consistently been held to eliminate only those provisions under decedent's will which confer a property right or financial benefit upon the electing spouse. A special power of appointment is not such a right or benefit.

Thus, an election to take against a will nullifies a clause relieving the electing spouse from any obligation to pay funeral expenses, Gentle Estate, 20 Fiduc. Rep. 407 (O. C. Montg. 1970), as well as tax clauses under the will which would benefit the electing spouse. See Brachman Estate, 11 Fiduc. Rep. 310, 312 (O. C. Schuylkill, 1960); Morcroft Estate, 16 Fiduc. Rep. 289, 295 (O. C. Alleg., 1966); Gentle Estate, supra. On the other hand, fiduciary rights conferred by will are not invalidated by an election to take against the will, since the electing spouse does not receive a property right thereby. Thus, an election to take against a will does not, absent a contrary intention manifested in the will, defeat a designation of the electing spouse to serve as executor, guardian or trustee. See Crawford's Estate, 340 Pa. 187 (1940-trustee); Mulligan's Estate, 28 Dist. 309 (O. C. Phila. 1919-guardian of a minor); Welder's Estate, 39 C. C. 343 (1911-executor). A special power of appointment, where the holder of the power derives no financial benefit therefrom, should similarly survive an election to take against a will.

In Huddy's Estate, 236 Pa. 276, 282 (1912), where testatrix had exercised her general power of appointment in favor of her own husband who subsequently took against her will, the court held that the husband

was still entitled to his benefits under the power of appointment because the property of the donor was not the "real and personal estate" of his wife, the donee. Thus, his election affected only the property of his wife, but nothing more. True, this case law has been changed by statute, Wills Act of April 24, 1947, P. L. 89, sec. 8(c), now section 2508(c) of the Probate Estates and Fiduciaries Code of June 30, 1972, (no. 164), but the court's ratiocination in Huddy is still sound in limiting the effect of an election to the "real and personal *estate* of the deceased spouse."

In Lonergan's Estate, 303 Pa. 142, 149 (1931), our Supreme Court intimated by way of dictum that an election would not even extinguish a *general* power of appointment. There was no holding on which we can rely as a precedent.

In Brachman Estate, supra, holding that the wife could exercise her special power of appointment over a $15,000 charitable bequest, the court said:

"What is significant here is that the testator actually makes a gift of $15,000 to a church or charitable institution and the only authority given to the wife is to select a beneficiary within limits prescribed in the will . . . [W]e do not have a general power of appointment in this case; on the contrary, it is only a limited one in no way giving any estate or interest to the widow as donee of the power." (pages 314-315.)

The operative distinction is that the widow here does not receive the property but is merely allowed to indicate the charities to which it should pass. Her position is akin to that of a fiduciary inasmuch as she is to exercise a certain power, for the benefit of parties other than herself, which her husband has seen fit to bestow upon her. There is no indication in decedent's will that his wife's election to take against the will would extinguish this power of appointment. And, as noted

above, Mrs. Grange did not specifically or by implication release or disclaim the limited power of appointment conferred on her by her husband's will.

Initially, it might seem that the widow, having by her election depleted the residue available for charities by one-third, should by such conduct be construed to have surrendered or extinguished her power of appointment. This is the position taken by St. Mary's Church in their brief. A New York Surrogate's court in Estate of Friedman, 323 N. Y. Supp. 2d 499, 503 (1971), adopted this position saying that they deemed "it fairer to declare that the [electing] spouse has forfeited all privileges and benefits rather than speculate as to testator's intention under the materially changed circumstances."

By contrast, our Pennsylvania courts have distinguished between *rights* and *benefits*. "The election which the widow is required to make is between rights, not between benefits. She has the right to abide by her husband's disposition of his property, or the right to override it and claim under the intestate law. These rights are inconsistent, and cannot co-exist. She has always the choice which she will assert, but the choice is of one or the other, not both, and does not legally depend in any degree on the mention or omission of her in the will, or on the quantum of benefits she receives or renounces under it": Cunningham's Estate, 137 Pa. 621, 628 (1890). See also Mulligan's Estate, supra.

On mature reflection, we have come to the conclusion that New York has taken the wrong approach. The right of election by a surviving spouse has been so much and for so long a time a part of the law of wills that every testator must be presumed to know that his spouse has a right to choose her intestate share rather than the property or estate that he has provided for

her in his will. In Schmick Estate, 349 Pa. 65, 70 (1944), our Supreme Court said very explicitly that "we cannot *assume* that a testator did not contemplate the possibility of his widow's election to take against the will. On the contrary, every married testator knows, or is presumed to know, that his surviving spouse may elect to take against the will. A testator may always condition his legacies depending upon the election of the widow: Mohn's Appeal, 76 Pa. 92; Carr's Estate, 138 Pa. 352, 22 A. 18." (Italics in original.)

The case of McGee v. Vandeventer, 326 Ill. 425, 158 N. E. 127 (1927), aptly analyzes the situation as follows:

"A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate . . . Her renunciation was a rejection of the provision made for her, and its effect was to obliterate from the will such provision, leaving the other provisions operative on the part of the estate not including her statutory interests. The will is not destroyed nor is any part of the estate rendered intestate. The widow may act as executrix or trustee of a trust or donee of a power in which she has no beneficial interest unless it appears by the will that the execution of the trust or exercise of the power is dependent on her acceptance of the provisions of the will for her own benefit."

Viewed in this light, we come to the conclusion that Charles E. Grange must have known that his wife had the power to take her intestate share rather than her life interest in the residue of his estate. He had his particular reasons for giving her the power of appointment in the first place, thus showing his confidence in her ability to rightly select those charities that she would know that he favored. Had he wished to deprive her of this right by her election, he could very easily

have so stated in his will. Not having deprived her of this privilege by any express provision, we must hold that Mrs. Grange did retain her power of appointment and that the charities selected by her in her will are the ones to receive the residue of her husband's estate.

We are encouraged in this holding by various analogous situations suggested by Mr. Churchman. Thus, it can often happen that a spouse will leave family furniture to children, and, in order to avoid a family fight, will name the surviving spouse as referee in case of disagreement among the children. It would seem to be obvious that in this kind of case, an election to take against the will would not destroy the umpire status of the surviving spouse. This is very akin to our case.

Sometimes a will will provide for a bank to act as a sole trustee, but also provide that on all investment matters a husband's decision is to govern. Here again, it would seem clear that an election to take against the will by the husband would not destroy such a provision.

Similarly, provisions authorizing the surviving spouse to select a grave or monument, to determine the lawyer, real estate or investment broker, etc., would not be affected by an election.

If Mrs. Grange, or any surviving spouse, can act as an executor and trustee even though the spouse is taking against the will, then it would seem that *all power* given to the executor and trustee would also be vested in the surviving spouse if named as executor and trustee. Such powers can involve rights of sale, compromise claims, decide on distribution of principal, decide questions of distribution of income in a spray trust, apportionment problems, tax problems and various other matters generally appearing in modern wills. These are all matters *relating to* the

property of the decedent but, of course, as in our case, *do not create an interest in property. . . .*

And now, December 14, 1973, the account is confirmed nisi.

*John L. Harrison, Jr.,* of *Snyder & Bent,* for accountant.

*J. Horace Churchman,* for Trustees of the University of Pennsylvania on behalf of the Hospital of the University of Pennsylvania.

*Walter Y. Howson,* by *Otis W. Erisman,* for St. Mary's Episcopal Church.

*John F. Meigs,* of *Saul, Ewing, Remick & Saul,* for Bryn Mawr Hospital.

*S. Jonathan Emerson,* of *Montgomery, McCracken, Walker & Rhoads,* for the Home of the Merciful Saviour for Crippled Children.

*Paul C. Heintz,* of *Obermayer, Rebmann, Maxwell & Hippel,* for Hahnemann Medical College and Hospital.

*Ralph C. Busser, Jr.,* for Inglis House, Philadelphia Home for Incurables.

*James W. Sutton, Jr.,* for Commonwealth.

## OPINION SUR EXCEPTIONS

KLEIN, A. J., March 13, 1974.—Charles E. Grange died in 1927. In his will, he provided, inter alia: "And the balance of my said residuary estate, I direct be paid and distributed unto such eleemosynary, charitable or educational institutions as my beloved wife, Annie C. Grange, may by last will in writing direct and appoint . . ." The will provided further that if she failed to exercise the power of appointment, the right was given to their son, and if he did not exercise the power, to their daughter.

Annie C. Grange filed an election to take against her husband's will. She died in 1931, leaving a will in

which she expressly referred to the power of appointment under her husband's will and directed that the balance of the residuary estate be divided among five charitable organizations which she designated.

The question before us for determination is whether her election to take against her husband's will extinguished her power of appointment.

The auditing judge said in his adjudication that "There is a remarkable dearth of authority on the question here at issue, not only in Pennsylvania but also in other states." The briefs of learned counsel for the litigants and our own independent research verify this statement.

The auditing judge, after a full and comprehensive discussion of the problem, reached the conclusion that the widow's election to take against the will did not extinguish the power of appointment vested in her. We agree for the reasons so well set forth by him in his scholarly adjudication.

Accordingly, the exceptions are dismissed and the adjudication is confirmed absolutely.