## SARKIE'S APPEAL.

1. Where A., who was a foreigner and a male representative of the decedent, and had mortgaged his share, after residing here some years, absented himself for nine months, the court granted letters testamentary to an inhabitant, at the instance of the attorney of a sister of decedent, appointed to collect her share, and of the mortgagee, and this refused to interfere on behalf of A. on his return.
2. Residence and title to a share in the estate are material qualities for an administrator, and want of these will authorize the register, in his discretion, to appoint the nominee court of one otherwise having less title to the office, under the act of Assembly.

APPEAL from the Register's Court of Philadelphia county.

*Jan.* 15, 16.—On the 24th February, 1844, appellant filed a petition, stating that in 1833, his younger brother Catchick died in Calcutta, and letters of administration there and in London were then granted to appellant, who also administered in Copenhagen. In 1837, he came to Philadelphia to administer on the estate here, and to attend to his own family's interest, under the will of his grandfather, under which his brother derived his estate. As that estate was not ready for his distribution, there being no other assets, he proposed delaying to take out letters of administration until he could receive the funds. That petitioner was entitled to the administration: his brother dying without issue or widow, and leaving a mother and two brothers, one residing in Calcutta. In 1842, he was unexpectedly called to London, and his intended stay of a few weeks prolonged to thirteen months, until October, 1843. That in March preceding, letters of administration on Catchick's estate were granted to Joseph Cabot, without any necessity, there not yet being any funds to be reached, said Cabot being neither relative, creditor, nor recommended by any such; petitioner not having refused nor being incompetent, and no notice having been given to himself or counsel known as such, and residing here. There were no debts. He prayed a revocation and new letters to himself.

The respondent stated he knew nothing of petitioner's intention in coming here, or delay in administering, but when he took out letters, understood he had gone to England, intending to return home to Cal-

O

cutta, and that no relative of Catchick lived in the United States. He was informed his share was waiting for distribution by the administrator of his grandfather; the accounts were before auditors; that petitioner abandoned his attendance and refused to inform them who the relatives were; that he knew not where to notify him, or of his being represented by any counsel; that he acted at the instance of the attorney of a sister of Catchick, by whom he has since been recognised and directed as to appropriation of the money, and also by one holding the share of petitioner in pledge, until which is redeemed he is informed petitioner has no interest. That those represented here have no confidence in petitioner, but apprehend waste if delivered to him, he having forfeited their confidence.

Petitioner proved his absence was unexpectedly continued as stated; his administration in Calcutta; powers of attorney to himself and the administrator of his grandfather by various members of his family interested in the said estate; also, of Catchick to the same, to claim his share. That no account had been filed by Cabot. No debts appeared, and no notice was given; and also the power of attorney by the sister, under which Cabot claimed to act, to Richard and Samuel Oakford, to collect her estate, and that said Oakfords requested said Cabot to act. The appellee proved the deed of mortgage by appellant, part of which appeared to be paid; it recited that no part of appellant's share had been received by him, whereas, in fact, $15,000 had been. (It is proper here to state this pledge was stated by counsel to have since been redeemed; the deed was produced, and a motion was made to let it in as further proof, and that it had been executed without perusal by appellant.) The attorney of the mortgagee and of the brother objected to the revocation. It seemed there were three sisters, a mother and two brothers, in the family. The court dismissed the petition.

*C. Ingersoll*, for appellant.—The next of kin is deprived, and one not entitled is let in; and the allegations in the answer, to take him out of the act of Assembly, have not been proved. As to the mortgage, it is immaterial; the mortgagee was not connected with the estate. His absence at the time is unimportant; it was temporary, and he had long lived here for that purpose, particularly as the letters were then unnecessary. But he was entitled to notice, Goddard *v.* Cressdale, 3 Phil. 637; for his not being a subject does not affect our rule. Toller, 104, Ellmaker's estate, 4 Watts, 34; Caroon's case, Cro. Chas. 9; Act 1832, sect. 27, Purd. Dig. 716; even an alien enemy may administer, Brookes *v.* Philips, Cro. Eliz. 684; Tol. 34. It should have been durante ab-

sentia, if at all; Willing *v.* Perot, 5 Rawle, 264; Richie *v.*——, Hayw. 220; Toll. 104. The counsel here tendered the deed, to show the pledge was redeemed, but it being objected to, he stated the fact merely. Atkinson *v.* ——, 2 Phil. 416. The register has no discretion in such a case. Toll. 90; 1 Com. Dig. Admr. B., 6; 2 Bl. Com. 496, 504; 9 Rep. 39; Johns *v.* Rone, Cro. Chas. 106; Blackburn *v.* Davis, 1 Salk. 38. Nor has he obtained nomination of a majority; two sisters and mother are not shown to object, or to be of a different opinion from that entertained when he left. The answer not being responsive must be proved. As to the false recital, the deed was immensely long, and he never read it.

*Price*, for defendant.—Our policy is opposed to giving administration to non-residents; thus, even executors removing may be dismissed, Act 1832, sect. 27, Purd. Dig. 813. But the auditors' report in the record show they were in session, and there was no one to check the accountant till we appeared. There is no case of administration durante absentia the next of kin; and here it would be wrong, for one was represented here, and on that claim letters were granted; and this nomination the register was bound by; Ellmaker's case, 4 Watts, 37. There is a discretion, our acts having but little altered the English statutes. Offley *v.* Best, 1 Leo. 186; 1 Williams, Ex. 364; 11 Vin. Executors, 116, pl. 23. But take it as an appeal to this court's discretion, this record is sufficient. The rule is, that a majority in interest is to be preferred; Earl Warwick *v.* Greville, 1 Phil. 123; and the least taint of fraud would exclude any one; Ellmaker's case. The deed contains a false recital, and that shows enough fraud.

*Jan.* 21. SERGEANT, J.—The act of the 15th March, 1832, prescribes certain general rules, according to which the register is to be governed in granting letters of administration, but still there is a legal discretion to be exercised by him in many cases. He may grant them to the widow or relations, or he may join one or more of them with the widow, preferring those of the nearest degree of consanguinity, and males to females; and even these are not entitled, if incompetent, of which the register must judge. Among the causes of incompetency appears to be non-residence in the state, as may be inferred from the provisions of the 27th sect. of the act of 29th March, 1832, that when an administrator has *removed* from the state, or *ceased* to have any known place of residence therein, during the period of one year or more, the Orphans' Court may vacate the letters of administration; and the 27th sect. of the act of the 15th March, 1832, which prohibits letters testamentary being granted to any person not being an inhabitant

of this Commonwealth. Again, it is necessary by the words of the act of the 15th March, 1832, sect. 27, not only that the applicant should be a relation, or of kin, but he must be entitled to the residue of the personal estate, or a share therein. Notwithstanding, therefore, the preference claimed by the present petitioner, as male over a female, yet had this dispute occurred at the time the letters of administration were taken out, between the two persons claiming to be appointed administrator, the petitioner would have been liable to the objection, first, that he was not then a resident of this state; and secondly, that he had assigned or pledged his claim to others, and so was not entitled to the residue, or a share therein.

But the case is still stronger against him now, when an administrator, liable to no personal objection, has been appointed so far back as March, 1843, and has acted in the administration at the instance of the sister and a transferee, and was appointed at a time when the petitioner had been absent nine months from the United States, and it seems to have been important to the estate that an administrator should be appointed to prosecute the claim before auditors, and the claim has been so prosecuted, and is now on the point of being distributed. There is nothing in the case, under these circumstances, which, we think, would authorize us to disturb what has been done, and create unnecessarily new embarrassment, delay, or litigation.

Decree confirmed.