## Crawford's Estate.

Argued October 30, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Earl F. Reed,* with him *Roy G. Bostwick, Charles M. Thorp, Jr.,* and *Clyde A. Armstrong,* of *Thorp, Bostwick, Reed & Armstrong,* for appellant.

*W. Denning Stewart,* for trustee ad litem.

OPINION BY MR. JUSTICE PATTERSON, December 2, 1940:

This appeal is from a decree of the court below dismissing exceptions filed by appellant, Annie Laurie Crawford, to its action in removing her as co-trustee under the will of her deceased husband, George W. Crawford, and in disallowing a portion of her claim for compensation as co-executor.

George W. Crawford, the testator, died on April 6, 1935, leaving his widow, Annie Laurie Crawford, a minor child, Martha Sharp Crawford, and an estate, consisting largely of personalty, the appraised value of which exceeded $29,000,000. By his will, testator placed his residuary estate in trust to pay the income from three-fourths to his widow and the income from the remaining one-fourth to his daughter. Mrs. Crawford and the Union Trust Company of Pittsburgh, who were also named co-executors, were designated as co-trustees. On June 29, 1935, the executors distributed certain of the assets of the residuary estate to themselves, as trustees, and at that time Mrs. Crawford joined with her co-trus-

tee in filing a bond in the amount of $20,000,000. Subsequently, on March 30, 1936, Mrs. Crawford elected to take against the will, whereupon she received one-half of the principal of the estate outright and the trust for her benefit was terminated. On the same date the co-trustees executed a formal acceptance of the trust for Martha Sharp Crawford. Liability on the $20,000,000 bond was reduced to $10,000,000 and Mrs. Crawford gave her individual bond for $10,000,000.

The executors filed their first account on February 4, 1938, filing at the same time, as trustees, a first and final account in the trust terminated by Mrs. Crawford's election to take against the will and a first account in the trust for Martha Sharp Crawford. The court below appointed a trustee ad litem for unborn persons having a possible interest in the estate, and the case proceeded to audit. The executors' account was confirmed absolutely, on September 30, 1938, and the balance shown was awarded to Mrs. Crawford and the Union Trust Company, in part as trustees and in part as executors for further accounting. A second account was filed by the executors on November 2, 1939, and, at this time, the trustee ad litem, in a report submitted by him to the court, suggested that by removing her residence from the state in 1936 and by electing to take against the will Mrs. Crawford had rendered herself incompetent to act as trustee.

After audit, at which testimony upon the issue of Mrs. Crawford's competency to serve as fiduciary was taken, the court below awarded the balance for distribution, as shown in the executors' second account, one-half to the Trust Company as sole trustee for Martha Sharp Crawford and one-half to Mrs. Crawford, individually, and ordered the balance remaining for administration distributed to the Trust Company as sole executor. The court also amended its decree of distribution of the balance shown in the first account of Mrs. Crawford and the Union Trust Company, as trustees for Martha Sharp

Crawford, entered August 24, 1938, by distributing that balance to the Trust Company as sole trustee. To this action by the court below, the effect of which was to remove her as co-trustee and to deny her claim for additional compensation as executrix, Mrs. Crawford filed exceptions. The exceptions were dismissed by final decree of the court below and this appeal followed.

The action of the court below in removing appellant from the position of trust, in which she was placed by the will of her deceased husband, upon its own motion, is unusual and drastic. While the removal of a trustee is a matter resting largely within the discretion of the court having jurisdiction over the trust, it is equally clear that an abuse of that discretion renders its exercise subject to review. As was said in *Mathues's Estate*, 322 Pa. 358, 359: "The removal of a trustee is a drastic action, which should only be taken when the estate is actually endangered and intervention is necessary to save trust property." See also *Barnes's Estate*, 339 Pa. 88, 96. And, this is particularly true where, as here, the fiduciary is a testamentary trustee who enjoyed the confidence of the settlor of the trust: *Barnes's Estate, Mathues's Estate*, both supra; *Bailey's Estate*, 306 Pa. 334; *Neafie's Estate*, 199 Pa. 307; Restatement of Trusts, section 107 (f). "A testator has, as a property right, the privilege and power to place the management of his estate in a selected person as a condition of his bounty": *Mathues's Estate*, supra, at 359. The status of such a fiduciary is not the same as that of a trustee, guardian or administrator appointed by the court.

The court below has asserted, as grounds for its action, that appellant was disqualified to act as trustee because of her nonresidence and her election to take against the will; also because of failure to coöperate with, and hostility toward, the corporate trustee and because of extravagant and speculative tendencies in trust management. It is our duty to examine these grounds to determine whether they afford a proper basis for re-

moval of this trustee, and whether they are supported by the evidence.

We think it clear that the mere fact of nonresidence is not, of itself, sufficient to justify the removal of a testamentary trustee. The Fiduciaries Act of 1917, P. L. 447, provides, in section 53 (a), that "Any orphans' court having jurisdiction of the accounts of . . . trustees shall have exclusive power to remove such . . . trustee *as the circumstances of the case may require.* . . . When such fiduciary has removed from this State, or has ceased to have any known place of residence therein during the period of one year or more." The words "as the circumstances of the case may require" are significant, for they were not present in the Act of June 14, 1836, P. L. 630. See *Bloomer's Appeal,* 83 Pa. 45. They clearly express a legislative intention that nonresidence shall be a ground for removal of a trustee only if, in the sound exercise of a discretionary power conferred upon it, the orphans' court deems such removal necessary for the best interests of the particular trust estate. This further appears from the provisions of section 57 (a) of the Act of 1917, empowering the orphans' court to appoint nonresident fiduciaries under bond, and from section 57 (b), authorizing the appointment of a resident fiduciary to serve *with* a nonresident in the management of trust property. If nonresidence alone effected a disqualification to act as trustee, then these sections of the Act would be meaningless and wholly without either purpose or effect.

This is not a case involving the removal from the state of a sole trustee in consequence of which either the management of the trust estate or its supervision by the orphans' court will be inconvenienced. All of the trust assets remain in the hands of the resident corporate fiduciary and appellant has filed a substantial bond for the performance of her duties. There is nothing in the bare fact of her nonresidence that would jeopardize the trust. The court below appeared to recognize this, for

it stated: "A mere change of state domicile would not be considered a detrimental circumstance requiring removal"; and, it proceeded to discuss additional circumstances supposedly establishing appellant's disqualification. *Friese's Estate*, 317 Pa. 86, *Frick's Appeal*, 114 Pa. 29, *Sharpe's Appeal*, 87 Pa. 163, *Sarkie's Appeal*, 2 Pa. 157, cited by the trustee ad litem, involve the power of the courts to refuse letters of administration to nonresidents and have not the remotest relation to the question of *removing a testamentary trustee.*

It is urged that appellant's election to take against the will made her incompetent to administer the testamentary trust created by testator for the benefit of their minor child. Admittedly, her renunciation would not have this effect unless the provisions of the will clearly indicated that such was the intention of the testator. See *Anck's Estate*, 11 Phila. 118; *Murphy v. Murphy*, 125 Fla. 855; *McGee v. Vandeventer*, 326 Ill. 425. The court below purports to find such an intention expressed in Article VIII of the will, which provides: "If my wife should elect to take her share of my estate provided by law instead of taking the provisions for her benefit set forth in this will, I direct that *as to all my property* except that going to my wife under her said election all the provisions of this will (except those for the benefit of my wife) shall be carried out in the same manner as if my said wife had died immediately after my death." The qualifying phrase "as to all my property" discloses that the testator is here referring solely to the distributive provisions of the will and not to the administrative provisions. Article VIII is essentially dispositive, whereas Articles XI and XII relate to the appointment and powers of the executors and trustees. In Article XI, the testator says: "In case of the inability or refusal of my said wife to act or continue as trustee hereunder, *whether this be occasioned by refusal to accept, death, resignation or otherwise,* I direct that such vacancy shall not be filled, but said, The Union Trust Company

of Pittsburgh, shall act as sole trustee hereunder." It is obvious that the testator did not intend appellant's election to take against the will to occasion her inability to act; if he had so intended, he would have included it among the enumerated causes.

Since neither the relevant provisions of the Act of 1917 nor the terms of the will afford a basis for the removal of appellant, as we hold, it is clear the action of the court below can only be sustained if the evidence supports its conclusion that, by her own conduct, she has rendered herself incompetent to serve.

As to lack of coöperation with the corporate trustee, there are the findings that appellant has traveled extensively since 1936, visiting Europe and White Sulphur Springs, West Virginia, in the summer, and Aiken, South Carolina, in the winter; that she has resided in New York City and Greenwich, Connecticut; and that her visits to Pittsburgh have been few and brief. Appellant is a woman of means, accustomed to such travel both before and after her marriage, and this is a fact which was known to the testator when he drafted his will and appointed her trustee. Her yearly visits to South Carolina have been made in the interest of her daughter's health. She has appointed counsel and an attorney-in-fact in Pittsburgh to receive and forward to her at all times any communications from her co-trustee and has consulted the latter before undertaking any extensive journey. She has frequently expressed to her co-trustee a desire to be informed on all matters affecting the estate, to take part in all necessary deliberations, and to be present at all meetings requiring her attendance.

Despite appellant's absences from Pittsburgh, the trustee ad litem and the court below have been able to point to but one instance, in the Summer of 1938, when her co-trustee experienced difficulty in consulting with her. On this occasion she was in Europe. It appears from the record that she obtained the assurance of the

co-trustee, before leaving, that there were no matters of administration which would require that she defer her trip. During her absence, an officer of the co-trustee attempted to communicate with her by letter, suggesting that she "would perhaps like to have another meeting at an early date" concerning investment problems which had been discussed in the spring. Appellant's counsel replied that she was in Europe and would return within three weeks but that, if the matter was urgent, he would communicate with her at once by telephone or cable. This course was not requested. It is difficult to see how this single instance supports the conclusion of the court below that "the record is replete with indisputable evidence of a failure to coöperate" or the assertion of the trustee ad litem that appellant deliberately "stayed away" to frustrate her co-trustee. These charges are particularly unwarranted in view of the positive testimony of the responsible officers and employees of the corporate trustee that appellant has always evidenced an intention to coöperate and that her absences have occasioned no difficulty whatever in the management of the estate. The record clearly indicates that she has taken an active part in the administration. Nor, can it be assumed that the testator intended that she should forego travel for health and pleasure when there were no matters to require her presence in Pittsburgh; it was intended that the corporate trustee should retain the assets of the trust and perform the routine details of its administration which it is capable and in a position to do.

The assertion of the court below that appellant is hostile to the co-trustee finds even less support in the evidence. It appears to be based upon her retention of independent legal counsel and an agent through whom communications from the co-trustee were to be referred to her; her insistence upon being consulted in all matters pertaining to investments; the presentation of a claim against the estate upon a note executed to her by

the testator; and her occasional disagreement with the co-trustee on matters of management. None of these acts amounted to hostility. Appellant's retention of counsel and an attorney-in-fact facilitated the conduct of the affairs of the estate and enabled her better to discharge her responsibilities. Her claim against the estate was uncontested, and its payment was confirmed by the auditing judge. No petition for her removal as executrix was filed by any party in interest on this ground, nor did the court below see fit to intervene when the matter was first brought to its attention. As the claim has been paid, it is difficult to see how this could be regarded as a continuing source of hostility between the trustees and between appellant and the estate. See *Purman's Estate,* 334 Pa. 238, 243.

The fact that appellant occasionally disagreed with her co-trustee in matters of judgment is of no significance. Such differences of opinion as there have been have not resulted from any animosity or hostility, but, as it appears, have represented an amicable exchange of views in the best interests of the estate. Such differences of opinion are salutary, rather than detrimental to the trust. Indeed, this is one of the chief advantages inherent in a co-trusteeship. Certainly the testator, who had great confidence in the judgment of appellant in business matters, never intended that she should supinely echo the opinion of the co-trustee in all matters affecting the estate. The complete absence of hostility between the trustees is established by the uncontroverted testimony of appellant and the representatives of the Union Trust Company, who are in the best possible position to judge of its existence or nonexistence.

The record is equally barren of evidence to support the charge that appellant's extravagance and speculative tendencies are a source of danger to the estate. Upon the subject of speculation, appellant is said to have delayed and opposed the conversion of "speculative" investments, in 1938, upon the ground that the position of

the stock market was not favorable. It must be borne in mind that the bulk of the testator's estate was invested in securities which the court below regarded as "speculative," and that the will contained clear and positive provisions authorizing the fiduciaries to retain such investments and to purchase nonlegal securities. See *Clabby's Estate*, 338 Pa. 305. Under these circumstances appellant was entitled to exercise her equal judgment in determining whether the investments should have been disposed of at that time, and, as the officers of the co-trustee testified, the estate benefited by her counsel. The court below refers also to appellant's purchase from the estate of a large block of nonlegal securities, in 1939, as evidencing a predilection for speculation. It appears from the record, however, that she obtained leave from the court to buy these stocks in order that the estate might dispose of them immediately and at a price higher than that which could have been obtained had they been thrown in bulk upon the open market. This, too, was to the advantage of the trust. Appellant has stated that she appreciates the need for conservative investment in dealing with the property of the trust, and the officer of the co-trustee in charge of investments testified that in his conferences with her he detected "no lack of conservatism."

Finally, as a ground for its action, the court below has referred to certain expenditures, charged to the estate by appellant, which it regards as unreasonable and unwarranted. Among these are expenses of her counsel, amounting to $751.55, the cost of a telephone call to her in Germany and another to White Sulphur Springs, the sum of $48,000.00 awarded to her for the support of the daughter, the fees of her counsel, amounting to $98,750.00, and her own fee of $175,000.00 as executrix, $142,500.00 of which has already been paid. It is sufficient to say that, with the exception of appellant's compensation, all of these items have been approved by the court and paid without objection by any

party in interest. Her appointment of an attorney to act for her and for the estate in conjunction with counsel retained by the corporate trustee was not opposed by the latter, and, as the auditing judge stated, "it may be assumed that the executors believed his services were valuable in the settlement of the estate." While the aggregate of the counsel fees is a large sum, it is not unreasonably disproportionate to the size of the estate, and, in the absence of any allegation or proof to the contrary, must be presumed to represent the fair value of the services rendered. In the report of the trustee ad litem, whose own compensation is substantial, it is aptly stated: "The size of this estate, the complexities of the problems and the responsibility in connection therewith, the enormous amount of work done by the attorneys and the results obtained to date, all seem to your Trustee to justify the fees of the attorneys."

The same observation might well be made with regard to the compensation of appellant as executrix. It cannot be assumed, as the trustee ad litem suggests, that, because a substantial fee was paid to the attorney selected by her, he must have performed some of her duties as executrix for which she should be deprived of compensation. There is no evidence to support the innuendo that appellant improperly delegated her duties or powers to counsel, and the reasoning indulged in would lead to the same fallacious conclusion if applied to the corporate executor and its counsel. Appellant and her co-executor joined in a stipulation whereby they voluntarily limited their compensation to $175,000.00 each, the total sum being less than 2% of the gross estate administered. In view of her services and the responsibilities she has assumed as executrix, the compensation appears reasonable, and should have been allowed in full.

The payment to appellant of $48,000.00 for the support of the minor child, representing the cost of her maintenance for two and a half years, is not excessive

as a matter of law when her station in life is considered. Such payments are expressly authorized by the testator in Article VIII of the will, which directs that "liberal expenditures" be made for this purpose.

Appellant and her co-executor joined in the retention of special counsel to assist in the settlement of Federal taxes due from the estate. This counsel was employed by appellant in the first instance, and it is asserted by the court below that this was an unnecessary expense incurred by her. In view of the successful termination of the proceedings, and in view of its previous confirmation of the moderate fee paid, it is difficult to understand the basis for the court's objection.

As a final instance of extravagance, the court below points out that appellant persuaded her co-trustee to borrow the sum of $700,000.00, for the payment of current taxes assessed against the estate, from a New York bank, rather than liquidate some of the assets of the trust for that purpose. If this was an error of judgment, it was one common to both trustees. However, the course pursued at appellant's suggestion was in complete accord with the direction of the testator in Article XII, as follows: "I do not wish to have the value of my estate reduced by forced sales of stocks, bonds or other property in order to raise money to pay taxes." And, the borrowing of money is therein expressly authorized "in the sole discretion of such executors . . . and for such amounts and upon such terms as such executors or their successor or any such administrator shall deem proper." Furthermore, it was testified that, by appellant's efforts, the estate was able to procure the loan at a lower rate of interest than the co-trustee had contemplated paying.

We are compelled to conclude, upon our examination of the whole record, that no valid ground existed either for the removal of appellant as trustee or for the denial to her of further compensation as executrix. Many witnesses testified that she is a woman of unusual business

ability, that she was intimately associated with her husband in the management of his affairs, that she was familiar with his investment policies and with his investments. She has demonstrated considerable ability in this field of administration and she has at all times exhibited diligence and interest in the problems of the estate. She is acquainted with the structure and personnel of many of the corporations whose securities are among the assets of the trust, and this knowledge is of value to her co-trustee and the estate. In many respects her abilities and activities are similar to those of the trustee in *Barnes's Estate,* supra, and much that was there said of the attempt to remove that fiduciary could be appropriately repeated in the present case. Any suggestion that appellant has attempted to benefit from the estate at the expense of her daughter is inconsistent with the testimony that she is "a devoted and watchful mother" and with her voluntary stipulation to take no compensation for her services as trustee. She enjoyed the confidence of the testator, who appointed her to this position of trust, and her removal would be contrary to the express desire of both the guardian of her minor child and her co-trustee. In view of all the circumstances present we think that the action of the court below amounted to a clear abuse of discretion and that its final decree must be reversed.

The decree appealed from is reversed, and it is ordered that the second account of the executors, as entered at audit, including the item of $15,000 credited to the accountants for the further compensation of Annie Laurie Crawford as co-executor, be confirmed absolutely; that the balance for distribution as shown in said account be awarded, one-half to Annie Laurie Crawford and the Union Trust Company of Pittsburgh, as co-trustees, and one-half to Annie Laurie Crawford, individually; and that the balance remaining for administration be distributed to Annie Laurie Crawford and the Union Trust Company of Pittsburgh, as co-executors,

for further accounting. It is also ordered that the schedule of distribution, entered at the audit of the first account of the trustees for Martha Sharp Crawford et al., awarding the balance to Annie Laurie Crawford and the Union Trust Company of Pittsburgh, as co-trustees, approved August 24, 1938, be reinstated. Costs to be paid out of the estate.

Mr. Justice LINN dissents.