Holmes Trust.

18

Argued January 8, 1958. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, JONES and COHEN, JJ.

*Ralph S. Croskey,* with him *F. Kenneth Moore, Norman R. Bradley,* and *Croskey & Edwards,* for appellant.

*Richard K. Stevens,* with him *Federico F. Mauck, S. Gordon Elkins, Wright Mauck, Hawes & Spencer,* and *Stradley, Ronan, Stevens & Young,* for appellees.

OPINION PER CURIAM, March 17, 1958:

The decree from which these appeals were taken is affirmed, at the appellant's costs, on the following opinion of President Judge TAXIS of the Orphans' Court of Montgomery County.

"The present controversy was initiated by petition to remove the co-trustee in two trusts. One of the petitioners, Lewis A. Holmes, is the settlor and co-trustee of both of these *inter vivos* trusts. Helen H. Hallock and Katharine C. Holmes, the other two petitioners, hold beneficial interests therein. On October 26, 1956, citations were issued directing Frederick L. Raker to show cause why he should not be removed as co-trus-

tee. Answers were filed and a hearing held on February 28, 1957.

"No other court has previously taken jurisdiction of these trusts. The trust instruments were executed in Montgomery County, both trustees reside here, and therefore this court is the proper forum to entertain the present petition. Orphans' Court Act of 1951, §301(3) and (6).

"Except for the beneficial provisions, the terms of both *inter vivos* trusts are the same, and were created by Lewis A. Holmes by transferring shares of Frank M. Weaver & Co., Inc. to himself and Frederick L. Raker as co-trustees. Mr. Raker was given the sole right to vote the stock, and the trusts were made irrevocable. Frank M. Weaver & Co., Inc. is a closely held family corporation. The bulk of the stock is held by Lewis and Katharine Holmes and their daughter Helen M. Hallock, individually, the balance being held by Lewis A. Holmes and Frederick L. Raker as trustees under the terms of the aforesaid indentures. Frederick L. Raker holds individually only six of the 1,949 outstanding shares.

"The trust created by deed of March 2, 1948, was designed primarily for the benefit of the daughter of the settlor, Helen Holmes Hallock, who receives the income during the life of her parents and the principal after their deaths. Should the daughter predecease her parents, the daughter's issue take as contingent remaindermen. The trust created by deed dated March 3, 1948, directs the accumulation of income during the minority of Lewis Holmes Raker, grandson of the settlor and son of the co-trustee Raker, and further directs payment of accumulated income and principal to this beneficiary in stated proportions as he attains the ages of 21, 30, and 40. Should Lewis Holmes Raker die before reaching age 40, his next-of-kin take as con-

tingent remaindermen. In both trusts co-trustee Raker is given the power, in his sole discretion, to make payments from income and principal for the comfort and medical care of Katharine C. Holmes, wife of the settlor.

"At the time of execution of these instruments in 1948, Raker was married to the daughter of the settlor. He was also vice-president and secretary of Frank M. Weaver Company, Inc., and the relationship at that time between Mr. Raker and his wife and his in-laws was harmonious. However, in April, 1955, the settlor's daughter obtained a divorce from Mr. Raker, subsequently remarried and is now known as Helen H. Hallock. After the divorce family harmony gave way to acrimony, and on August 15, 1955, Mr. Raker left the employ of the Weaver Company, although still retaining his trusteeship. In January, 1956, he accepted employment with Mayer Pollock & Co., Inc. of Pottstown, Pa. It is Mr. Raker's employment with the Mayer Pollock concern which gives rise to the present petition to dismiss him as co-trustee. The petitioners have alleged that Mayer Pollock is in direct competition with the Weaver Company; that it is to Mr. Raker's direct advantage to persuade customers to purchase from Mayer Pollock rather than from the Weaver concern; that as a result there is a conflict of interests between Mr. Raker and the Weaver Company; and that therefore there is a conflict of interests between Raker individually and Raker as trustee.

"At the hearing it was clearly established that the Mayer Pollock and Weaver companies are in direct competition. Both companies are engaged in the fabrication and erection of structural steel. The area of concentration of the two companies differs to a degree in that much of Mayer Pollock's tonnage is devoted to heavy bridge work, whereas Weaver does little or no

work in this field. However, by Mr. Raker's own admission some portions of the Mayer Pollock enterprises do directly overlap the activities of Weaver Company, namely, fabrication work for companies in the Pottstown area. It is apparent, then, that at least to some undetermined degree these two companies are competitors. It is equally apparent that when Mr. Raker directs his skill, knowledge, and energies toward advancing the interests of his present employer, he simultaneously is hindering, or at least runs the risk of hindering, the progress of Weaver Company. Since the bulk of the corpus of these two trusts consists of Weaver Company shares, I must conclude that Mr. Raker's present position with Mayer Pollock is antagonistic to the demanding standard of loyalty owed by Mr. Raker in his fiduciary capacity to these trusts.

"The requirement of loyalty of a trustee is the most intense fiduciary relationship in our law. Judge CARDOZO put it this way: 'Many forms of conduct permissible in the work-a-day world for those acting at arms length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd.' Meinhard v. Salmon, 249 N. Y. 458, 464, 164 N.E. 545, 546. Sections 921 and 331(5) of the Fiduciaries Act of 1949 state that the court shall have exclusive power to remove a trustee 'when, for any other reason, the interests of the estate are likely to be jeopardized by his continuance in office'.

"It would seem, therefore, that the existence of a potential conflict of interest would thus be sufficient

to disqualify Mr. Raker from continuing to act as trustee. The present case is stronger, however, for it has been demonstrated that instances of conflict have already occurred. For example, since Mr. Raker's association with Mayer Pollock, and as a result of his efforts on behalf of that firm, Mayer Pollock has solicited and obtained new business from Weaver customers. An essential element in developing sales in the steel fabrication and erection business is the estimation of costs and the placing of bids on proposed building projects. During his association with Mayer Pollock, Mr. Raker has had a hand in 50% of the estimates and bids submitted by that firm. Thus Mr. Raker can fairly be characterized as being a key employe of Mayer Pollock, and like key personnel in any enterprise, his personal success in the Mayer Pollock Company will to a large extent be determined by the success and progress of the company itself. In addition it was demonstrated that Mr. Raker's presence at Mayer Pollock had been at least an indirect influence responsible for the employment by Mayer Pollock of two draftsmen formerly employed by Weaver Company.

"It has been argued on behalf of Mr. Raker that his position in the present controversy is analogous to that of a corporate director serving on the boards of two competing corporations; that interlocking directories are permissible under Pennsylvania law in the absence of proof of fraud or unfairness; that neither fraud nor unfairness has been proven in the present case and that therefore Mr. Raker should not be removed as the trustee. Although both trustees and corporate directors are properly classified as being fiduciaries, the beneficiaries they serve and the duties owed thereto vary sufficiently to render any application of the analogy strained and unwise.

"It has also been advanced that Mr. Raker's son is the primary beneficiary of one of the trusts; that the relationship between father and son is a happy one and that therefore Mr. Raker would not be inclined to jeopardize the interest of his son in these trusts. The premise of this conclusion was clearly stated in paragraph 18 of Mr. Raker's answer where he alleged that '. . . my interest in said corporation is entirely and solely on behalf of my son, whereas the interest of Holmes and Katharine C. Holmes is in part with respect to the salaries which they each draw from the company.' However, these trusts were created for the benefit of Mrs. Hallock and Mrs. Holmes, daughter and wife of the settlor, respectively, as well as for the benefit of Mr. Raker's son. Furthermore, as to Mrs. Holmes, the settlor gave Mr. Raker a discretionary power to make payments from income and principal for her comfort and medical care. Thus the trustees' obligation and concern must reach to all of the beneficiaries; and the showing of favoritism to one or more beneficiaries is grounds for removal of the trustee: Restatement, Trusts, §107, comment (b). As a result of the divorce and regardless of where lies the blame for this broken marriage, it appears that Mr. Raker's concern is quite naturally for his only son to the exclusion of his former wife and mother-in-law.

"Furthermore, the acrimony between Mr. Raker and the beneficiaries arising out of the divorce and the events precipitating the same must be taken into consideration. In Mooney's Est., 56 Montg. L. R. 1, 3, where, as in the present case, a trustee had been divorced from his wife who was also the life tenant of the trust, this court said: 'While friction between the fiduciary and one or more beneficiaries of the trust is not, standing alone, sufficient ground for the removal of the trustee, it may be taken into consideration with other elements constituting grounds for removal.'

: · · "In addition to the friction existent between the trustee and beneficiaries the same friction exists between Mr. Raker and his co-trustee, the settlor Mr. Holmes. In analyzing the effect of a similar situation in Myers's Estate, 205 Pa. 413, 414, the court said: 'In the case of partnership want of harmony and confidence may of themselves be sufficient to compel a dissolution even in the face of positive agreement as to the term of continuance. Though not to the same extent, the same principles are applicable to the case of co-trustees and others required to act together for common benefit.'

" 'The court may remove a trustee if his continuing to act as trustee would be detrimental to the interests of the beneficiary. The matter is one for the exercise of a reasonable discretion by the court.' Restatement, Trusts, §107, comment (a). In view of Mr. Raker's present position as an employe of a competitor of the Weaver Company and taking cognizance of the hostility between Mr. Raker and the settlor and co-trustee and two of the principal beneficiaries of these trusts and also of his avowed favoritism toward one of the beneficiaries, it is apparent that Mr. Raker's continuing to act as trustee will be detrimental to the interests of the beneficiaries as a whole. Accordingly, in an exercise of the reasonable discretion of this court, the prayer for removal shall be granted."

Decree affirmed at appellant's costs.