356 A.2d 773
**In re ESTATE of Ernest G. NASSAR, Sr., Deceased.**
**Appeal of Ernest G. NASSAR, Jr., et al.**

Supreme Court of Pennsylvania.
Argued March 8, 1976.
Decided May 12, 1976.

Paul E. Moses, Pittsburgh, for appellants.

John R. Bowman, Francis J. Carey, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

### OPINION OF THE COURT

ROBERTS, Justice.

We are asked to review the appointment of a successor trustee by an orphans' court. Ernest G. Nassar (hereinafter decedent) died testate on January 29, 1969. The seventh article of his will, the language of which gives rise to most of the difficulties in this case, provided:

"*Seventh*: I give, devise and bequeath to my friend, JOHN JOSEPH, in trust and for the benefit of my son, ERNEST G. NASSAR, JR., one-eighth (⅛th) of

my Estate, and to hold same for a period of ten (10) years after my death. In the event of the death of my Trustee, JOHN JOSEPH, before or during this Trusteeship, I name, nominate and appoint CHARLES F. McKENNA, as Substitute Trustee in place of the Deceased Original Trustee, for the following uses and purposes:

1. During the term of this Trust the Trustees shall pay the income from said Trust quarter-annually to or for the benefit of my son, ERNEST G. NASSAR, JR., for the periods hereinafter set forth.

2. In the event that any payment of income hereinabove authorized to be made to my said son, ERNEST G. NASSAR, JR., shall be insufficient in the opinion of the Trustee or Trustees to provide for the welfare, maintenance, support and education of such Beneficiary, the Trustee or Trustees are authorized to use from time to time so much of the principal of the trust as in the opinion of the Trustees may be advisable therefor, and, provided further, that the said Trustee or Trustees in their sole discretion are authorized to expend principal for the investment in any business or professional venture in which my said son, ERNEST G. NASSAR, JR., may wish to participate, if the same appears sound to my said Trustee or Trustees.

3. In the event of the death of my said son, ERNEST G. NASSAR, JR., during the term of this trust, any remaining principal shall be distributed to his issue, if any, and if none, the said Trust Estate shall be distributed as follows:

(a) One-third (⅓rd) thereof to PAULINE A. NASSAR, his mother, if she survives him;

(b) One-third (⅓rd) to the Widow of my son, ERNEST G. NASSAR, JR., if he is survived by

such Widow, and if at the time of his decease she is living with him as his wife; and

(c) One-third (⅓rd) to my son, RANDALL LEE NASSAR, or his issue, if he dies leaving issue.

"Should any of the above named alternate Beneficiaries predecease my son, ERNEST G. NASSAR, JR., such shall go to and be distributed equally among the survivors of said alternate Beneficiaries in equal shares."

Joseph, the trustee named by decedent, served as trustee from June 15, 1972, until December 31, 1974.

On May 27, 1973, Joseph petitioned the orphans' court to be allowed to resign as trustee. A hearing on the petition was held on November 15, 1973. When it appeared to the orphans' court that there were parties who had a contingent beneficial interest in the trust at the end of its 10 year term who were not represented at the hearing, the court ordered a recess in order to appoint a guardian ad litem to represent these interests.

A second hearing was held on November 27, 1973. The court permitted Joseph to resign as trustee and appointed the Union National Bank of Pittsburgh (hereinafter Union) as successor trustee.

Appellant[1] Ernest G. Nassar, Jr., (hereinafter Nassar) opposes the appointment of Union as trustee. His opposition is based upon: (1) the existence of hostile feeling between himself and Union and (2) the conflict of interest between Union's role as trustee for Nassar's trust and its role as trustee for an independent trust under decedent's will for the benefit of those who are the contingent beneficiaries under Nassar's trust.[2]

1. We hear this appeal under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1975). Respondent herein is the guardian ad litem appointed by the orphans' court.

2. Because we vacate the appointment of Union on the basis of existing hostility we need not reach the conflict of interest issue.

Nassar claims that the hostility arises from the transmittal of the former trustee's hostility to him to the new trustee and from the appearance in the orphans' court of one of Union's trust officers who testified on behalf of the former trustee concerning the reasonableness of the former trustee's requested trustee fees.

The hostility between Joseph and Nassar was caused, in part, by the language of the instrument creating the trust. Article seventh makes no specific statement that the corpus of the trust is to be distributed to Nassar during the life of the trust. Joseph believed that Nassar was primarily the income beneficiary of the trust and that the corpus was to be distributed under the terms of the residuary clause of the will. As a consequence, he was extremely reluctant to invade the corpus of the trust for Nassar's benefit.[3]

Nassar, however, maintains that decedent intended him to receive the corpus of the trust. He relies on both the language of article seventh which grants to the trustee the discretion to invade the corpus for his benefit and the example of an identical trust set up under article eighth for the benefit of his brother Randall. The trustee of that trust, decedent's brother, within three years of the creation of the trust, distributed virtually the entire corpus to the person who, in Joseph's view, was merely the "income beneficiary."

These fundamentally different views of decedent's intent have, during Joseph's trusteeship, given rise to a se-

---

**3.** Joseph's attorney stated the terms of the trust as:
"[T]he only things that could be paid to [Nassar] was [sic] his living expenses, maintenance, educational expenses and any sound business or professional *expenses* in the discretion of the trustee that would be necessary." (Emphasis added.)
Notice that where article seventh uses the word "investments" the trustee's attorney uses the word "expenses" and where the trust instrument states that the trustee is to use his discretion to determine whether the "investment" is "sound," the trustee's attorney applies that discretion to determine whether the "expense" is "necessary." These differences would seem to be the source of much of the hostility between Nassar and Joseph.

vere hostility, readily apparent on the record, between the trustee and Nassar. Nassar claims that Joseph has conveyed his view of decedent's intent to Union, and that a continuation of the former hostility is certain to result from Union's appointment as trustee.

We find this argument to be persuasive. Normally a trustee will not be removed because of friction between the beneficiary and the trustee.

"Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust."

Restatement (Second) of Trusts § 107, comment c (1959). Interference with the proper administration of the trust may result if the friction rises to the level of hostility [4] or if the nature of the trustee's duties under the trust are such as to require good relations between the trustee and the beneficiaries.[5]

This case involves both hostility and a trust which requires good relations between the trustee and the beneficiary. The record of this case clearly demon-

---

**4.** See *Hodgson's Estate*, 342 Pa. 250, 257, 20 A.2d 294, 296–97 (1941):
  " 'While inharmonious relations between trustee and cestui que trust, not altogether the fault of the former, will not generally be considered a sufficient cause for removal, yet where they have reached so acrimonious a condition as to make any personal intercourse impossible, and to hinder the proper transaction of business between the parties, a due regard for the interests of the estate and the rights of the cestui que trust may require a change of trustee.' "
  See also II A. Scott, Law of Trust § 107, at 845 (1967):
  "[W]here there is such friction or hostility as to impede the proper performance of the trust . . . the trustee will be removed."

**5.** G. Bogert, Trusts & Trustees § 527 (1960):
  "If . . . it appears that the [trustee's] duties are merely ministerial or formal, or that for any other reason there is no danger of action adverse to the cestui, removal [on the basis of hostility] will be denied, but, if the trust duties are such that they are not likely to be properly executed so long as ill will exists, the court will decree removal."

strates that Joseph and Nassar were hostile to one another. Joseph represented to the orphans' court that he had been "harassed" by Nassar, that Nassar had called him a "liar and indicated that he was not doing what was right" and that Nassar had "made a great number and many unnecessary requests and rather foolish requests . . ." Joseph attacked Nassar's motives and judgment several times at the hearing. Nassar, on his part, indicated that he believed that Joseph was not complying with either the terms of the trust or settlor's intent. These feelings on both sides amount to much more than mere friction.

Moreover, the Nassar trust vests the trustee with broad discretion to invade corpus for Nassar's benefit. Not only may the trustee invade corpus "to provide for the welfare, maintenance, support and education" of Nassar, but he is also empowered to "expend principal for the investment in any business or professional venture in which [Nassar] may wish to participate, if same appears sound to [the trustee]." The decision to invade corpus for investment is in the trustee's sole discretion.[6] This power under the trust, which requires much more than a mere "minister" as trustee, dictates that the trustee and the beneficiary have a good relationship with each other. Decedent apparently intended that the trustee act as a surrogate father, bringing his maturity and experience to bear on investment proposals made by his son. This intention is impossible of accomplishment when feelings of hostility obtain between the trustee and the beneficiary.

**6.** The standard of judicial review of a trustee's exercise of such discretion is very limited:

"If the settlor manifested an intention that the discretion of the trustee should be uncontrolled, the court will not interfere unless he acts dishonestly or from an improper motive or fails to use his judgment."

II A. Scott, Law of Trusts § 128.3, at 1017 (1967). See also id. at § 128.7, at 1033; Restatement (Second) of Trusts § 128, comment i. (1959).

■ All of this shows that had Joseph not resigned, the orphans' court could have removed him without abusing its discretion. This is true despite the strong preference given trustees named by the settlor of a trust.[7] In this case we are not concerned with the removal of a trustee. Rather, we are asked to review the orphans' court's selection of a successor trustee. If Joseph's hostility has been passed on to Union or if Nassar has no confidence in Union, so that the appointment of Union will frustrate the purposes of the trust, the appointment of Union as successor trustee would be an abuse of discretion. It appears that each of these conditions exists.

■ The record indicates that Joseph relied on his personal friendship with trust officers at Union to persuade them to accept nomination as successor trustee. It is reasonable to assume that Union would give substantial weight to Joseph's interpretation of the trust both because of his position as the resigning trustee and because of the friendly relations between Joseph and Union. Moreover, one of Union's trust officers appeared in court and testified on Joseph's behalf, in opposition to Nassar's exceptions to the accounting, concerning both trustee's and attorney's fees to be paid out of the trust for services during Joseph's trusteeship. This partisan activity, in opposition to the beneficiary's interests, seems somewhat unusual in a successor trustee who is required to give its unswerving loyalty to that beneficiary. Even though the testimony was not a breach of the fiduciary's duty of loyalty because Union had not yet been appointed, it is easy to understand that its willingness to take an active part in an adversary contest against the beneficiary's interest might cause the beneficiary to

7. II A. Scott, Law of Trusts § 107.1, at 849 (1967):
   "The court is less ready to remove a trustee who was named by the settlor than it is to remove a trustee appointed by the court or by a third person in the exercise of a power to appoint trustees."

   See also Restatement (Second) of Trusts § 107, comment f (1959).

question its future performance.[8]  The record also reveals that Nassar wrote to Union before the hearing and informed it that he wished it not to accept nomination as successor trustee because he believed that they would have a conflict of interest as trustee for his trust and as trustee for the residuary trust.  Despite this opposition by the beneficiary of the trust, and despite the appearance of the claimed conflict of interest, Union accepted appointment as trustee.

Given that this sort of hostility between the former trustee and Nassar interfered with the effective realization of decedent's intent, it is not unreasonable to expect the same result under the same conditions of hostility between the successor trustee and the beneficiary.  Therefore, it appears that the appointment of Union will interfere with accomplishment of the trust's purposes and must be vacated.

We turn now to a second issue in this case:  Who are the proper parties to appear before the orphans' court in a proceeding to appoint a successor trustee to replace Union.  There are four possibilities: Joseph, Union, the guardian ad litem, and Nassar.  Joseph, whose resignation as trustee was accepted effective December 31, 1974, is clearly out of this case.  Union may not appear to suggest a successor trustee because of the present hostility between it and Nassar.  If the chain of transmitted hostility and lack of confidence in the trustee is to be broken, the selection of a successor trustee to replace Union must be free of the taint of hostility.

We are left then with the beneficiaries: Nassar and the guardian ad litem for the contingent remaindermen.

---

8.  A successor trustee is required by the duty of loyalty to enforce claims against prior trustees.  In this case, Nassar might very well question whether Union would be willing to take such action against Joseph, were it necessary, in view of the manifest friendship between it and Joseph.  See II A. Scott, Law of Trusts § 177 (1967);  III id. § 223.3.

Both of these parties may appear and may suggest successor trustees.

Of course, it does not follow that the court is obligated to accept the suggestions of either the guardian ad litem or Nassar. Scott states:

"The court is not bound to appoint a person suggested by the beneficiaries, although the wishes of the beneficiaries are ordinarily an important factor to be considered in the making of an appointment. In the English case of *In re Tempest* Lord Justice Turner said that the court in exercising its discretion in appointing a trustee (1) should have regard to the wishes of the settlor if expressed in the trust instrument or clearly to be collected from it; (2) should not appoint a person with a view to the interests of some of the beneficiaries in opposition to the interests of the others; and (3) should have regard to the question whether the appointment would promote or impede the execution of the trust."

A. Scott, Law of Trusts § 108.2 (1967). In this instance "execution of the trust" involves appointing a trustee who will exercise the discretion entrusted to him by decedent for Nassar's benefit.

Decree appointing Union trustee vacated. Case remanded for proceedings consistent with this opinion. Costs on trust.

POMEROY and NIX, JJ., concur in the result.