467 A.2d 1148

In re C.A. WHITE and Flo B. White, Deed of Trust
Dated: December 13, 1965.

Appeal of Kenneth K. KING, Sarah King, Thomas F.B. King,
John King and Mary King, Juniata Valley Bank, Raymond
E. White, J. Nevin White and Roy A. Wingate.

In re C.A. WHITE and Flo B. White Deed of Trust
Dated: December 13, 1965.

Appeal of Kenneth K. KING, Sarah King, Thomas F.B. King,
John King and Mary King, Juniata Valley Bank, Raymond
E. White, J. Nevin White and Roy A. Wingate.

Superior Court of Pennsylvania.

Submitted Sept. 15, 1982.

Filed Nov. 4, 1983.

Petition for Allowance of Appeal Granted and Denied
Feb. 23, 1984.

104

Robert W. Costigan, Philadelphia, for appellants.

James B. Kozloff, Philadelphia, for Juniata Bank, participating party.

John C. Garner, Philadelphia, for White, et al., participating parties.

Before CAVANAUGH, BECK and MONTEMURO, JJ.

CAVANAUGH, Judge:

The instant appeal is from an order of the court below dismissing exceptions to an order granting the petition of Juniata Valley Bank to resign as trustee and denying the petition of a beneficiary under the trust to remove Raymond White as an individual trustee. In order to put the

two petitions in the court below in proper focus, the history of the trust must be reviewed. The inter vivos trust in question was established by C.A. White and his wife, Flo B. White, in 1965 for the benefit primarily of their thirteen grandchildren. The trustees named in the deed of trust were settlor, C.A. White (now deceased), his two sons, J. Nevin White and Raymond White, his son-in-law, Roy A. Wingate, and the Juniata National Valley Bank (now the Juniata Valley Bank). The principal assets of the trust were two tracts of timberland totalling over three thousand acres. The trust agreement provided for the establishment of separate trusts for each grandchild who was to receive income while the trust remained in existence. Principal distribution was to be made to each grandchild as follows: one-half when he reached the age of twenty-five and the balance of principal at age thirty. Appropriate provisions were made in the event of the death of a grandchild prior to complete distribution of principal.

Over the years a conflict developed in investment policies between Juniata Valley Bank and Raymond White which culminated in 1980 with Raymond's threat to sue the bank unless it resigned. As a result of these disputes the Juniata Valley Bank and Roy A. Wingate petitioned the court to resign as trustees. Subsequently, a petition was filed by one of the beneficiaries under the trust requesting that Raymond White show cause why he should not be removed as trustee.

The Orphans' Court may remove a trustee under the authority of the Probate, Estates and Fiduciaries Code, Act of June 30, 1972, P.L. 508, No. 164, 20 Pa.C.S.A. § 3182 when interests of the trust are likely to be jeopardized by the continuation of the trustee in office.[1] Removal of a trustee is a drastic action and proof of the need of this remedy must be clear. *Croessant Estate*, 482 Pa. 188, 393

1. While Section 3182 of the Probate, Estates and Fiduciaries Code refers specifically to grounds for removal of a personal representative of an estate, Section 7121 of the Code provides that the grounds for removal of a trustee shall be the same as those for removal of a personal representative.

A.2d 443 (1978). Nevertheless, "[w]hile the removal of a trustee is a matter resting largely within the discretion of the court having jurisdiction over the trust, it is equally clear that an abuse of discretion renders its exercise subject to review." *Crawford's Estate,* 340 Pa. 187, 190, 16 A.2d 521, 523 (1940). *See* also *Croessant Estate, supra; Scientific Living, Inc. v. Hohensee,* 440 Pa. 280, 270 A.2d 216 (1970); *La Rocca Trust,* 419 Pa. 176, 213 A.2d 666 (1965). In our opinion a review of the history of the trust reveals that the court below abused its discretion in denying the petition to remove Raymond White as a trustee. In recent years Raymond was insistent that the trust engage in speculative investments notwithstanding that they would not produce income for the beneficiaries and involved substantial risks. His basis for investments such as gold, foreign coins and puts and calls was that he had made a great deal of money in speculating and saw no reason that the trust should not invest in like manner with trust assets.[2] He apparently saw no difference between risking his own money in speculative ventures and risking the assets of the trust.

It is clear that a mere error of judgment is not grounds for removal of a trustee. "All that the courts require of a trustee is common skill, *common prudence and common caution." Barnes' Estate,* 339 Pa. 88, 94, 14 A.2d 274, 276 (1940). In this case Raymond manifested lack of common caution and prudence and the Juniata Valley Bank alone acted as a restraining force on his desires to speculate. Raymond wanted to buy canned food as an investment and store it. He was interested in buying wheat, corn, oats and other commodities as well as livestock. He pressured the bank as trustee to invest in

---

**2.** With respect to the desired investments in gold, corn, food, commodities, livestock, puts and calls, etc. the lower court stated:

The controversial investments would have been improper not only because they were speculative, but also because, while they very well may have appreciated in some case substantially in value, they would not have been income producing as such, but rather would have amounted to increase in capital.

foreign currencies such as Swiss francs and German marks. His justification was "... I own Swiss francs and German marks today, and have for years. And I have broken no laws and see that I'm breaking no laws by owning them. And I've doubled my money in many of them. And I do not count it as a poor investment or *risky* investment." (Emphasis added).

The court below correctly pointed out that "it is probably true the bank exerted the most influence in deterring improprieties" and the dissent accepts this assessment of the situation.[3] In this regard, with respect to Raymond's desires for the trust to go far beyond the range of what would be considered reasonable and proper trust investments, his counsel on appeal states in the appellate brief:

> Finally, even if Raymond has not learned as much about trust law as might be hoped, he is nevertheless only one of three co-trustees. While *it is clear that the Bank exerted the most control in overriding Raymond's suggestions,* there is no evidence in the record that Raymond was able to bully the remaining two co-trustees as alleged by the appellants.[4] (Emphasis added).

Based on past performance, Raymond's continuation in the role of trustee will likely be adverse to the best interest of the trust. His desire to involve the trust in unorthodox and speculative investments is undoubtedly based on his belief that the trustees were vested with almost unlimited and absolute power under the deed of trust to do what they

3. The court below in its opinion also states:
    Raymond White's insistence on certain courses of action has deviated from what this Court would consider to be appropriate courses of action under the law and the instrument of trust. Clearly, the corporate fiduciary was correct in resisting Raymond's forceful suggestions that the trust should invest in gold, silver, pennies to be stored underground until their value increases, puts and calls, canned foods and commodities.

4. The record indicates that Raymond also had conflicts with his individual co-trustee and brother-in-law, Mr. Wingate, who petitioned to withdraw as co-trustee together with the Juniata Valley Bank. None of the individual co-trustees testified at the hearing except Raymond and the record clearly reflects that he was the moving force in the conflict with the bank.

wanted with trust property. One example is his stated belief that the trustees could value the timberland, the main asset in the trust, at any figure they wanted whether for sale or with respect to principal distribution. He was of the opinion that even if they valued the land at a dollar, although it might be a ridiculous valuation, they had the power to do so.[5] His beliefs concerning speculative investments continued notwithstanding the objection of his co-trustee, Juniata Valley Bank, based on an opinion letter of its counsel. The opinion letter stated in part that: "[t]he governing instrument in this case gives the trustees a broad power to invest and reinvest in such investments as they deem best for the beneficiaries and the trust. Nevertheless, the provision does not go so far as specifically to permit speculative investments, especially when considered

5.  With respect to the valuation of the timberland owned by the trust Raymond testified as follows:

>    Well, of course they realized that that would be a case in which it's very hard because nobody would be satisfied that if one of the beneficiaries bought a tract of timber that it would be fair. And there's no way you're going to get thirteen people to agree. It was discussed there that they would write the trust, and it is my understanding that this trust is so written, that the trustees have the final say, and even if they sold the tract of timber for what would be a ridiculous price, and the most ridiculous price would be a dollar, that it would still be legal.

>    .    .    .    .    .

>    Q.  The important thing is, sir, did you believe it?
>    A.  Sure I believed it.
>    Q.  Do you believe it today?
>    A.  I believe that the trust is written that way, and until you can tell me where it is written different … and explain to me, then I think the trustees have the power to decide. I'm not saying that the trustees are going to sell it for a dollar.
>    Q.  But you believe they have the power to do so?
>    A.  I believe they have quite a bit of power here and probably if they would do such a thing they would be called insane, foolish, and be in court—the same as I am here today.

>    .    .    .    .    .

>    A.  Collectively they have the power to sell the timber. At what price I cannot tell you. Now you want to make it a dollar, you make it a dollar. If you want to make it a hundred thousand, you do whatever figure you want; *but in my judgment the trustees have the power to sell that timber at the price they decide.* (Emphasis added).

with the stated purpose of the trust which is to provide 'regular income' for the settlor's grandchildren." The law firm concluded that the proposed investments by Raymond for the trust in copper pennies and lumber would not be proper trust investments because they probably would be deemed speculative.

An example of proposed self dealing by the individual co-trustees, Raymond and Nevin White, is illustrated in Raymond's desire to purchase lumber from Nevin for the trust. The bank would not agree to this as it believed it involved self dealing and a breach of trust. With respect to this transaction Raymond testified:

Q. Now you brought that proposition to bank?

A. We more than brought it to the bank; it was agreed on. The trustees all agreed on it in my recollection and the Trust Committee put a stop to it. They vetoed it, as they vetoed dozens and dozens of things on this trust.

Q. Did they tell you why they vetoed that particular—

A. Yes, the very same thing as Mr. Groninger was trying to explain to you.

Q. What is that?

A. That it wasn't lawful. And I'd like to know under what laws and whose. You're an attorney, you might tell me; I'll listen.

Q. Was it ever explained to you that this is a form of self-dealing and it might be illegal on that basis?

A. The price was at the market price and was not considered illegal and I consider it not illegal, and the trust is so written. If you will get the trust out and read—Please read to the people here what it says about self-dealing. Would you get those paragraphs and read it?

Q. Mr. White, you can do your own reading—

A. That's right, I can do my own reading but I can't do my own thinking.[6]

The record reflects that the two individual trustees would have gone along with Raymond concerning his intention to buy lumber from his brother, a co-trustee, and his desire to buy gold. Raymond testified:

Q. Are you saying that three of the four trustees would vote in favor of something and then the bank just would not do it?

A. That's exactly right. The three trustees voted in favor of the lumber and there was no lumber bought; and they voted in favor of the gold and there was no gold bought.

It was incongruous for the court below to recognize that the bank acted very properly in not approving Raymond's speculative investments and that it was most influential in "deterring improprieties" and then deny the petition to remove Raymond as a trustee and allow the bank to resign as trustee. The bank was in reality the only restraining influence on Raymond and it was his threat to sue the bank, if it did not resign, that triggered the bank's resignation. Raymond's conduct was directed more to obtaining the bank's acquiescence in his demands then in furthering the interests of the trust. Further, while Raymond wanted the trust to invest in assets that he as an individual could very properly invest in, no matter what the risk, they were not suitable as trust investments. The court below erred in denying the petition to remove Raymond as a trustee.

■ The second aspect of this case that is very troubling is the order of March 19, 1981 approving the resignation of

---

6. Concerning the valuation of the land and self dealing concerning the purchase of lumber the court below stated:

The bank was also correct in resisting what appeared to be on at least one occasion a suggestion that self dealing occur with respect to certain lumber, just as the Bank was correct in taking a contrary position concerning the valuation that could be placed on the share of any given beneficiary.

Juniata Valley Bank.[7] This aspect of the case must be considered in light of the court's permitting Raymond to continue as a trustee knowing full well that the corporate fiduciary was the only reason that Raymond did not invest in assets which were unsuitable for a trust. The primary reason for the bank's resignation was Raymond's threat to bring suit if it did not resign. In our opinion the court below abused its discretion in permitting the bank to resign in these circumstances. The bank's presence as a trustee is clearly more beneficial to the trust than Raymond's continuing as a trustee. The settlor, C.A. White, had been president of the Juniata Valley Bank and during his lifetime was insistent that the bank continue as corporate fiduciary. A meeting was held in May, 1980, between Raymond White and his brother Nevin White and the bank's officers responsible for the administration of the trust. Mr. Groninger, a director of the bank and member of the trust committee, was present at the meeting and told Raymond and Nevin about their father's wishes. Mr. Groninger testified as follows:

Q. And what was it you told them at that time?

A. Their father had come to me individually—and other bank directors, but *he talked to us individually and made us commit to him that we would never resign, and stay in and represent the grandchildren in the future to the best of the bank's ability under the laws of banking,* and I made him that pledge some years ago.

Q. When you say their father, are you referring to C.A. White?

A. C.A. White, yes. (Emphasis added).

Mr. Groninger further testified:

Q. You mentioned that Mr. White was on the board—

A. He was president at the time.

---

**7.** There appears to have been no formal ruling entered concerning the petition of Roy A. Wingate to resign. Apparently, it was in effect denied as in the opinion in the court below the court refers to the "three remaining co-trustees."

Q. Of the Juniata Bank?

A. Right. When the bank had actually considered re-
signing some years back.

Q. Were you on the board of the bank at that time?

A. I was on the board of the bank at that time. And he
talked to individual members of the bank to not vote
in favor of getting rid of his trust.

Q. Did he explain to you why he did not want the bank
to resign at that time?

A. No, anymore than he had a lot of faith in the bank;
he was president of the bank—

The settlor had great confidence in the corporate fiduci-
ary and his confidence was well placed until the bank
resigned as a result of Raymond's harassment and threats
to sue. The court below erred in interpreting the deed of
trust as expressly allowing any trustee to resign. The deed
provided:

The Trustees shall have the power to appoint their
Successor Trustees. If any of the Trustees named herein
shall die, resign, become incapacitated, or refuse to act
further as Trustee hereunder, without having appointed a
Successor Trustee, the other Trustees named herein may,
but shall not be required to, appoint a Successor Trus-
tee..."

Juniata Valley Bank could not resign based solely on the
terms of the trust, as the trust agreement did not give a
trustee the absolute right to resign. The court below
erroneously decided that the deed of trust gave the bank
the right to resign. Therefore, it did not really exercise any
discretion in permitting resignation since it felt that resig-
nation was allowed by the terms of the deed of trust.
Discretion cannot be exercised by a court unless it recog-
nizes that it has discretion to act in a particular situation.
See Louis v. Clark, 227 Pa.Super. 547, 323 A.2d 298 (1974).
The court below indicated that the beneficiaries might well
have cause for concern that the corporate fiduciary, the one
trustee with no personal interest in the lumber business,

was going to be out of the picture, but felt that this was not enough reason to deny the bank's petition to resign. This conclusion is unwarranted especially in view of the denial of the petition to remove Raymond White as trustee.

The court below and appellee, Juniata Valley Bank, relied on *Nixon's Estate*, 235 Pa. 27, 83 A. 687 (1912) to support the contention that Juniata Valley Bank was properly allowed to resign. In *Nixon's Estate, supra,* an individual trustee was permitted to resign over objections of an income beneficiary. The Supreme Court stated at 235 Pa. 30, 83 A. 688:

The general rule is that a trustee may relieve himself from the liabilities arising from a trust relation by submitting the administration of the trust to the jurisdiction of the court. In our State the right of a trustee to be discharged is recognized by statutes which provide the method of procedure. Appellant has complied with the statutory requirements and has done everything that the law requires to be done antecedently to the asking of a discharge. There may be, and no doubt there are, cases in which a court would be justified in refusing a discharge, as where there has not been an accounting, or where the trustee on account of benefits, accruing to himself had undertaken to do certain things, or for other sufficient reasons, the time had not arrived for the termination of the trust relation. But we see nothing of this character in the present case.

*There is nothing in this record to indicate that the remaining trustees are not fully competent to manage the trust estate, or that they are unwilling to do so. The trust estate will be as safe in their hands as it was in the hands of those who preceded them in its management. The argument that the cestuis que trustent will lose some advantage if the trustee be discharged is without merit.* (Emphasis added).

Appellee, Juniata Valley Bank, also relies on *Ortlip Trust*, 24 Fid.Rep. 109 (Montgomery County 1973) in which the Orphans' Court permitted the resignation of an eighty-five year old trustee who was in failing health, and appoint-

ed new trustees. Neither case is controlling in the matter before us. A corporate fiduciary was not involved in *Nixon's Estate* or *Ortlip Trust*, and of more importance, there was nothing to indicate that the beneficiaries would be harmed by the discharge of the trustee.

The Probate, Estates and Fiduciaries Code provides that after the confirmation of the final account and distribution to the appropriate parties, a trustee may be discharged by the court from further liability. 20 Pa.C.S.A. § 3184, 20 Pa.C.S.A. § 7121(3). The Restatement (Second) of Trusts deals with the situation in which a trustee may resign and provides in Section 106:

§ 106 Resignation of Trustee.

A trustee who has accepted the trust cannot resign except,

(a) with permission of the proper court; or

(b) in accordance with the terms of the trust; or

(c) with the consent of all the beneficiaries, if they have the capacity to give such consent.

The corporate trustee was not entitled to resign on the basis of the Restatement (Second) of Trusts, Section 106(b) or (c) and we must determine if the court properly granted permission to resign. Comment (c) to Section 106 of the Restatement (Second) of Trusts states in part: "It is within the discretion of the court whether to allow a trustee to resign. Ordinarily a trustee will be allowed to resign *if such resignation will not be unduly detrimental to the administration of the trust,* particularly if it would be unduly burdensome to the trustee to compel him to act as a trustee." (Emphasis added). As stated in *A.W. Scott, II,* The Law of Trusts § 106.1 (3rd Edition, 1967) page 838: "It is within the sound discretion of the court whether or not to permit [the Trustee] to resign ... *[b]ut where it would be disadvantageous to the administration of the trust, the court may refuse the trustee permission to resign.*" (Emphasis added). The resignation of Juniata Valley Bank as trustee cannot be other than detrimental to this trust. The bank made a commitment to the settlor to continue as

trustee. While this standing alone would not preclude its resignation, it is a factor to be considered.[8] In addition, the reluctance of the bank to serve as trustee should no longer exist upon the removal of Raymond as a trustee. In this case, it may well be disastrous to the trust to retain Raymond as a trustee and permit the Juniata Valley Bank to resign.[9] We believe the court below manifestly abused its discretion in allowing this. The best interest of the beneficiaries of this trust require that Juniata Valley Bank continue as a trustee and that Raymond White be removed as a trustee.

An appeal was also taken from the order of the court below of March 9, 1981, directing the trustees to pay counsel fee to Arthur A. Kusic, Esq., attorney for Raymond E. White and J. Nevin White in the amount of $12,759.39. In view of our decision, this aspect of the case will be remanded to the court below for further consideration of the appropriateness of payment of counsel fee from principal of the trust in any amount, and to determine the proper amount, if any, to be awarded.

Order granting the petition of Juniata Valley Bank to resign reversed, and order denying petition to remove Raymond E. White as an individual trustee reversed. The order of March 9, 1981, directing payment of counsel fee is reversed and the matter remanded for determination of the proper amount of counsel fee, if any, to be paid.

MONTEMURO, J., files dissenting opinion.

8. We believe that a corporate fiduciary must show greater cause for resignation that an individual. Corporate fiduciaries represent that through their trust departments they have greater skill than individuals in managing financial matters and have an impartiality and perpetual existence that individuals do not. Because of this they are often selected to act as executor and/or trustee. Once having undertaken this duty a corporate fiduciary should continue, unless the court is convinced that its resignation will not adversely affect the beneficiaries and the circumstances are such that the corporate fiduciary justifies the termination of its duties.

9. It should be noted that Raymond has no interest in this trust except as trustee. He is not an income or principal beneficiary nor is he a vested or contingent remainderman.

116

MONTEMURO, Judge, dissenting:

I must respectfully dissent.

We are confronted here with two questions: 1) whether Raymond White should have been removed as a co-trustee, and; 2) whether appellee bank's petition to resign as co-trustee should have been granted. The majority holds that the trial court, in permitting both of the above, abused its discretion. On the basis of the record before us, and keeping ever mindful of our scope of review, I have concluded that the decision of the court below should be affirmed.

Before addressing either of the issues stated above, I should first reiterate, as a preliminary matter, our scope of review. As a reviewing court we are limited to reversing only if there was abuse of discretion or error of law on the part of the trial court. *In Re: Croessant*, 482 Pa. 188, 393 A.2d 443 (1978); *Crawford's Estate*, 340 Pa. 187, 16 A.2d 521 (1940).

Title 20 Pa.C.S.A. § 3182(5) provides for the removal of a trustee "when the interests of the estate are likely to be jeopardized by his continuance in office." Our Supreme Court has added the following refinements to the statutory scheme. It has long been held that the removal of a fiduciary is a drastic action and that proof of the need for that remedy must be clear. *Estate of Croessant, supra; DiMarco Estate*, 435 Pa. 428, 257 A.2d 849 (1969); *Corr Estate*, 358 Pa. 591, 58 A.2d 347 (1948). This is especially so where the trustee has been personally appointed by the settlor. *Estate of Croessant, supra; Estate of Nassar*, 467 Pa. 325, 356 A.2d 773 (1976). It has been held that where the trustee enjoyed the confidence of the settlor, the power to remove him should only be exercised when the estate is endangered and intervention is necessary to protect the trust property. *Holmes' Trust*, 392 Pa. 17, 139 A.2d 548 (1958).

Appellants argue vigorously that Raymond White's continued presence as a co-trustee severely jeopardizes the trust assets. In support of their argument they direct the

court to testimony of instances where Raymond White has suggested investments in non-income producing property, and urged what appellants would characterize as self-dealing in the trust assets. These instances are thoroughly discussed in the majority opinion. There is no question however of the fact that none of these suggestions has been implemented. If they had been, my conclusion, and probably the conclusion of the trial court, would have been greatly influenced by this fact. I accept the trial court's assessment that "... it is probably true the bank exerted the most influence in deterring improprieties ..." (R. 62a). Nevertheless, I would not require the very drastic remedy of removal for mere suggestions when: 1) there are two other co-trustees capable of resisting and preventing any improprieties, and; 2) the trial court, which had an opportunity to personally hear the testimony of Raymond White and observe his demeanor specifically found that, "Indeed, Raymond has indicated that he now understands the necessity of first securing court approval for the policies he formerly advocated." (R. 62a)

I now turn to what I believe is the more difficult issue, whether the appellee bank should be permitted to resign as co-trustee. While there are statutes governing the procedure for resignation, e.g. 20 Pa.C.S.A. § 7121(3), 20 Pa.C. S.A. § 3184, there is none which specifically dictates circumstances in which a resignation may or may not be permitted.

The trial court's decision on this issue was abased in large measure on the Restatement (Second) of Trusts. Specifically, section 106 states that:

§ 106 A trustee who has accepted the trust cannot resign except,

   (a) with permission of the proper court; or
   (b) in accordance with the terms of the trust; or
   (c) with the consent of all the beneficiaries, if they have the capacity to give such consent.

Restatement (Second) of Trust § 106 (1959).

Contrary to the majority's assertion that "the court below erroneously decided that the deed of trust gave the bank

the right to resign. Therefore, it did not really exercise any discretion in permitting resignation ...", the court below actually decided that "both subsection a and b, we believe, apply to the instant situation." (R. 62a). We agree with the majority's assessment that the terms of the trust do not expressly allow any trustee to resign, as per subsection (b). In the absence of such a provision, subsection (a) of the restatement indicates that the permission of the proper court must be obtained. The question then becomes, on what basis does a court grant or withhold this permission?

Unfortunately, there is a dearth of case law, at least at the appellate level, on this question. Although I have looked to many of the same authorities as the majority, I would interpret these as suggesting the opposite result. The one appellate case which was cited by all of the parties on this issue, and which was relied on heavily by the trial court is the case of *Nixon's Estate*, 235 Pa. 27, 83 A. 687 (1912). In the *Nixon* case, the appellant was one of three co-trustees appointed under the testator's will. After filing a final accounting he applied to the court for a discharge. The lower court refused such application but was reversed on appeal. Specifically, the court stated:

> *The general rule is that a trustee may relieve himself from the liabilities arising from a trust relation by submitting the administration of the trust to the jurisdiction of the court. In our State the right of a trustee to be discharged is recognized by statutes which provide the method of procedure.* Appellant has complied with the statutory requirements and has done everything that the law requires to be done antecedently to the asking of a discharge. There may be, and no doubt there are, cases in which a court would be justified in refusing a discharge, as where there has not been an accounting, or where the trustee on account of benefits accruing to himself had undertaken to do certain things, or for other sufficient reasons, the time had not arrived for the termination of the trust relation.

But we see nothing in this record to indicate that the remaining trustees are not fully competent to manage the trust estate, or that they are unwilling to do so. The trust estate will be as safe in their hands as it was in the hands of those who preceded them in its management. The argument that the *cestui que* trust will lose some advantage if the trustee be discharged is without merit. (Emphasis added).

*Nixon, supra* 235 Pa. at 30, 83 A. at 688.

Scott has this to say on the resignation of a trustee:

It is within the sound discretion of the court whether or not to permit him [the trustee] to resign. Where the trustee has a good reason for wishing to resign, he will ordinarily be permitted to resign ..."

*Even though the trustee has no special reason for resigning, other than his desire to be relieved of further responsibility in administering the trust, the court will usually give him permission to resign.* But where it was to be disadvantageous to the administration of the trust, the court may refuse the trustee permission to resign. (Emphasis added).

A.W. Scott, II *The Law of Trusts* § 106.1 (3rd ed. 1967) p. 838.

Much in the same spirit is the following from *Handbook of the Law of Trusts.*

Naturally, a trustee who has accepted a trust but finds that administration of it has become burdensome or not in the interest of the beneficiaries should be able to rid himself of the trust duties .... The predominant consideration is the welfare of the beneficiaries.

A reluctant trustee is not desirable.

G.G. Bogert, *Handbook of the Law of Trusts,* § 31 (1973) p. 103.

Appellants argue that the welfare of the beneficiaries requires the court to refuse appellee bank's resignation. Their arguments on this issue are not lacking in appeal, and I might have been persuaded by them were I acting as a

120

factfinder. This however is not my function here. As was explicitly stated by our court in *E.I. duPont de Numours & Co. v. Berm Studios, Inc.*, 211 Pa.Super. 352, 236 A.2d 555 (1967):

> Appellate review of the record of a trial before a judge without a jury is limited to a determination of whether the findings of fact of the court below are supported by competent evidence and whether or not the lower court committed error of law.

*E.I. duPont v. Berm, supra*, 211 Pa.Superior Ct. at 354, 236 A.2d at 556.

In view of the above standard, it is clear that although appellants' arguments are appealing, they are misdirected. This will be demonstrated by the discussion below.

As is relevant to this issue the trial court specifically found that:

> It is correctly pointed out that trustee Raymond White's insistence on certain courses of action has deviated from what this Court would consider to be appropriate courses of action under the law and the instrument of trust. Clearly, the corporate fiduciary was correct in resisting Raymond's forceful suggestions that the trust should invest in gold, silver, pennies to be stored underground until their value increases, puts and calls, canned foods and commodities. The bank was also correct in resisting what appeared to be on at least one occasion a suggestion of self-dealing occur with respect to certain lumber, just as the Bank was correct in taking a contrary position concerning the valuation that could be placed on the share of any given beneficiary.

> The controversial investments would have been improper not only because they were speculative, but also because, while they very well may have appreciated in some case substantially in value, they would not have been income producing as such, but rather would have amounted to increase in capital.

> However, Raymond could not act alone and still cannot act alone. While it is probably true the bank exerted the

most influence in deterring improprieties there is no reason why the remaining individual trustees cannot in the future cause investment policies to remain within proper boundaries. Indeed, Raymond has indicated that he now understands the necessity of first securing Court approval for policies he formerly advocated. Certainly, there can be no excuse for the remaining trustees to conduct the investment policies of the trust inappropriately. For example, should a situation arise where the trustees deem some degree of self-dealing to be beneficial to the trust, there can be no excuse for failing to bring the plan before the Court for its review prior to implementing it. (R. 61a–62a)

Appellants make five specific assertions or subarguments in regard to this issue. Each will be set forth and disposed of briefly.

Appellants first assert that investments in gold, silver, pennies, puts and calls, foreign currencies, canned foods, commodities and lumber are not proper investments for the C.A. and Flo B. White Trust. Secondly, appellants assert that the trustees of the C.A. White and Flo B. White Trust may not arbitrarily determine valuation of shares for distribution or engage in self-dealing. Certainly these are legally correct statements. See 20 Pa.C.S.A. § 7302 *et seq* and Trust Agreement (R. 8a–17a). In addition, it cannot seriously be disputed that co-trustee Raymond White has suggested these measures in the past. There is no evidence however that such improprieties have in fact occurred. In the absence of any case law requiring that the suggestion of improprieties on the part of one co-trustee is a circumstance in which the court should refuse a petition for resignation on the part of another co-trustee, there is no misapplication of law here.

This being so, resolution of this issue then becomes a question of credibility. Appellants third, fourth and fifth assertions are that Raymond White would continue to suggest such improprieties, that the remaining individual co-trustee would not resist Raymond White's improper sugges-

tions, and that Raymond White would treat the beneficiaries unfairly. There is competent evidence to the contrary, as careful examination of the record has indicated. (See *e.g.* R. 186a, R 279a) The trial court had the opportunity to personally observe and examine each of the parties. As the included portions of the trial court's opinion indicate, it decided that the testimony favoring appellee's position was entitled to greater weight, and therefore ruled that the welfare of the beneficiaries was not endangered such that it should refuse appellee bank's petition to resign. We are not in a position as an appellate court to re-determine questions of credibility.

For the above stated reasons, I would hold that appellants have not demonstrated an abuse of discretion as would justify a reversal of the trial court's decision.

I would affirm.