484 A.2d 763

**In re C.A. WHITE and Flo B. White, Deed of Trust Dated December 13, 1965.**

**Appeal of Raymond WHITE and J. Nevin White, Trustees.**

**Appeal of the JUNIATA VALLEY BANK.**

Supreme Court of Pennsylvania.

Argued May 16, 1984.

Decided Nov. 20, 1984.

Robert Costigan, Philadelphia, for appellee Kenneth K. King, et al.

Samuel T. Swansen, Joseph D. Holston, Jr., for appellant Juanita Valley Bank.

Dorrance R. Belin, James W. Reid, John R. O'Brien, Scranton, for Sarah King, et al.

John C. Garner, Robert J. Hoelscher, Philadelphia, for appellees Raymond White & J. Nevin White, trustees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Before this Court is a review of the Superior Court order reversing the order of the lower court granting the petition of Juniata Valley Bank to resign as a corporate trustee[1]

---

1. Roy A. Wingate joined in on the bank's petition to resign as a trustee. However, there is no indication of record that the lower court ruled on this petition. In October, 1982, Mr. Wingate died, thereby making this omission moot.

and denying a petition to remove Raymond White as an individual trustee.

By an agreement dated December 13, 1965, C.A. White and Flo B. White, his wife, created an inter vivos trust naming their thirteen grandchildren as beneficiaries, and appointing C.A. White, his two sons, Raymond White (White) and J. Nevin White, his son-in-law, Roy A. Wingate, and Juniata Valley Bank (Bank) as Trustees. The purpose of the trust is to provide income to the minor beneficiaries until such time as each beneficiary reaches twenty-five years of age. At twenty-five, each beneficiary is entitled to receive one-half of his share of the trust corpus. The remaining one-half is to be distributed upon reaching the age of thirty.

The trust assets consist mostly of timber and coal properties situate in central Pennsylvania and valued by the Bank as of May 28, 1980 at $3,245,773.83. The agreement grants broad discretionary powers to the Trustees, including the power to: hold and continue to hold investment property; invest and reinvest without restriction in any securities or property deemed to be for the best interest of the trust or the beneficiaries; rent or lease property for such time and upon such terms as the Trustees in their discretion deem appropriate; sell and convey any trust property which they determine is in the best interest of the trust and its beneficiaries; and, finally, act as they shall see fit under the circumstances based upon their judgment as to the best course to pursue on behalf of the trust and its beneficiaries. In exercising their powers, the Trustees are not required to obtain the consent of any other person or any court.

C.A. White resigned as a Trustee on December 15, 1965. On June 25, 1980, the Bank and Wingate filed a Petition to Resign as Trustees. In their Petition, they indicated that a dispute arose between Raymond White and themselves regarding investment and management of certain timber and coal resources of the trust. As a result of the actions of the Bank and Wingate, one of the trust beneficiaries filed a Petition to Remove Raymond White as a Trustee. Hear-

ings on both Petitions were held on August 18 and 20, 1980. As the result of these hearings, the lower court entered an order granting the Bank's Petition to Resign and denying the beneficiaries' Petition to Remove Raymond White. Five of the trust beneficiaries, Kenneth K. King, Sarah King, Thomas F.B. King, John King and Mary King, appealed to the Superior Court, which reversed, concluding that White's past speculative investment proposals were indicative of his future behavior, and thus his continuation as a Trustee would be detrimental to the trust. Furthermore, the Superior Court held that "a corporate fiduciary must show greater cause for resignation that (sic) an individual." 321 Pa.Super. 102, 467 A.2d 1148. Accordingly, the Superior Court held that the lower court abused its discretion in refusing to remove White and in permitting the Bank to resign. We reverse.

Our review of the trial court's action in removing a trustee and permitting another trustee to resign is limited to determining whether that court abused its discretion or committed an error of law in so acting. *In Re Estate of Croessant*, 482 Pa. 188, 393 A.2d 443 (1978); *In Re Crawford's Estate*, 340 Pa. 187, 16 A.2d 521 (1940). If a trial court's adjudication is supported by the record, we cannot disturb its determination because we would have arrived at a different result.

This appeal raises two issues, the propriety of removing one trustee and the propriety of permitting another trustee to resign. The removal of a trustee is controlled by statute. The Fiduciary Code sets forth the grounds for removing a trustee [2]. The applicable section of the Code sets forth that a trustee may be removed:

2. *See* the Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S. § 7121, as amended by the Act of February 18, 1982, P.L. 45, No. 26, § 11, which states that the grounds for removing a trustee are the same as those for removing a personal representative of a decedent's estate.

(1) [for] wasting or mismanaging the estate, or is likely to become insolvent,

* * * * * *

(5) when, for any other reason, the interests of the estate are likely to be jeopardized by his continuation in office. 20 Pa.C.S. § 3182[3].

The beneficiaries contend that White's action had the potential of mismanaging the trust, thereby jeopardizing it. Specifically, the beneficiaries claim that White's proposals of investing in canned foods, wheat, corn, oats, livestock, Swiss francs and German marks were so speculative as to cause harm to the trust. The Superior Court agreed with this allegation and used these proposals as a basis for removing White. However, in addition to the fact that these proposals were not and could not be implemented by White alone, White testified that he did not consider these investments as poor or risky.

In *Croessant Estate, supra,* we refused to remove a trustee who had neglected the administration of a trust but promised to actively participate in the future. There we held that the removal of a trustee is a drastic remedy, and the need for such action must be clear. We also indicated that such action must be viewed in conjunction with the settlor's expressed confidence in the trustee, evinced by the trustee's appointment. In a case where a settlor appoints a particular trustee, removal should only occur when required to protect the trust property. *Holmes Trust,* 392 Pa. 17, 139 A.2d 548 (1958). (*See also, In Re Crawford's Estate, supra,* in which we refused to remove a trustee appointed by the settlor but accused of being hostile to the corporate trustee and of being prone to speculative investments.)

The present record is devoid of any *actual* wrongdoings by White. Although the Bank was of the opinion that White's proposals were speculative, White, as a successful businessman, disagreed. In any event, no such

3. *See* the Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S. § 3182.

proposal could be implemented without the approval of the majority of the Trustees. Apparently, the settlors had sufficient confidence in White to appoint him as a Trustee. Until such time as White violates some fiduciary duty, he cannot be removed. Furthermore, the fact that some of the trust beneficiaries are unhappy with White as a Trustee is of no importance. Obviously, the settlor intended that an independent party have control of the trust corpus, not the beneficiaries. Without a demonstration that the trust corpus is in danger of dissipation, mere displeasure of a beneficiary is an insufficient reason for removing a testamentary trustee.

The second issue presented for review is the Superior Court's reversal of the lower court's approval of the Bank's resignation as a Trustee. Both the trial court and the Superior Court relied upon § 106 of the Restatement (Second) of Trusts which provides:

A trustee who has accepted the trust cannot resign except

(a) with the permission of a proper court; or

(b) in accordance with the terms of the trust; or

(c) with the consent of all the beneficiaries, if they have capacity to give such consent.

While the trial court held that sections a & b were applicable, the Superior Court disagreed, finding that the trust agreement did not provide for resignation and that the Bank's resignation would be detrimental to the trust.[4]

Although our statutes do not speak directly of a trustee's right to resign, § 3184 of the Code[5] sets forth the procedure to be followed when the court permits the discharge of a trustee. Implicitly, a trustee has the power to resign subject to court approval. In *Nixon's Estate*, 235 Pa. 27, 30, 83 A.2d 687, 688 (1912), we stated:

4. Because the Bank and Wingate petitioned the court for permission to resign, we need not decide whether the White trust agreement permitted resignation.

5. Act of June 30, 1982, P.L. 508 No. 164, § 2, 20 Pa.C.S. § 3184, referred to by 20 Pa.C.S. § 7121(3).

The general rule is that a trustee may relieve himself from the liabilities arising from a trust relation by submitting the administration of the trust to the jurisdiction of the court. In our State the right of a trustee to be discharged is recognized by statutes which provide the method of procedure. Appellant has complied with the statutory requirements and has done everything that the law requires to be done antecedently to the asking of a discharge. There may be, and no doubt there are, cases in which a court would be justified in refusing a discharge, as where there has not been an accounting, or where the trustee on account of benefits accruing to himself had undertaken to do certain things, or for other sufficient reasons, the time had not arrived for the termination of the trust relation.

There is nothing in this record to indicate that the remaining trustees are not fully competent to manage the trust estate, or that they are unwilling to do so. The trust estate will be as safe in their hands as it was in the hands of those who preceded them in its management. The argument that the cestuis que trustent will lose some advantage if the trustee be discharged is without merit.

Furthermore, Comment (c) to § 106 of the Restatement (Second) of Trusts suggests that a trustee may resign so long as his resignation will not be unduly detrimental to the administration of the trust. This determination is at the discretion of the trial court, subject to a review of whether an abuse has occurred in the exercise of that discretion.

 In the lower court, the Bank indicated it wished to resign as a Trustee. No evidence was presented to demonstrate that the trust would be harmed by permitting this resignation. While some of the trust beneficiaries contended that White's investment proposals were harmful, and thus the Bank's position as a Trustee was necessary, such contentions were unfounded. Even if White's proposals were harmful, he could not act unilaterally. There appearing no evidence of *actual* harm to the trust, the

lower court did not abuse its discretion in permitting the Bank's resignation as a Trustee.[6]

The order of the Superior Court is reversed, and the order of the Court of Common Pleas of Juniata County is reinstated.

HUTCHINSON, J., filed a concurring and dissenting opinion.

McDERMOTT, J., filed a dissenting opinion in which NIX, C.J., joined.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Superior Court is reversed, and the order of the Court of Common Pleas of Juniata County is reinstated.

McDERMOTT, Justice, dissenting.

A fiduciary, is required in managing the assets of a trust estate, to exercise care, skill and the judgment of an ordinarily prudent person, 20 Pa.C.S. § 7302(b). Good intentions alone are insufficient. Neither should a trustee in managing the assets of another put them at risk because such risks were one time fruitful for the trustee in his private business. If a trustee should insist, adamantly insist, upon speculative investments, he shreds the safety net and weakens the confidence reposed in him. Without impugning the intentions or integrity of the instant trustee, that is exactly what he did. The majority answers that whatever he intended or insisted upon were never implemented and therefore harmless. The majority overlooks one crucial factor; the bank or co-trustee prevented their implementation. Now, courtesy of the majority, the bank has been allowed to resign the trust, leaving Mr. Raymond

---

6. In its opinion, the Superior Court suggests that a corporate fiduciary must show greater cause for resignation than an individual. This principle has never been adopted by this Court and is explicitly rejected.

White and his brother, J. Nevin White, as sole trustees. The record is replete with examples of risky and sometimes bizarre investment ideas proffered by Mr. Raymond White. Perhaps such ideas were magic for him in his private affairs, and doubtless he wishes to enhance the trust; but his duties to the trust differ materially from his own fortunes. Again, without impugning integrity, the trustee, Mr. Raymond White, would have made a considerable personal profit had the bank not refused, the purchase of lumber from Mr. White.

The majority insists that until there is evidence of actual wrongdoing a trustee should not be removed. Fair enough. Certainly, however, all the trustees should be kept in place. Permitting the bank to resign under the circumstances is to dilute the intention of the testator by at least a third, perhaps, indeed, excusing the very persons most relied upon to guard the trust. The majority insists upon a salutary principle of law, that a testator should have who he will be his trustee. If more than one trustee is named however, the intention of the settlor in diversifying their backgrounds should be honored: particularly so where one is a bank, lawyer or other professional trustee appointed for their expertise. To allow one to resign, unreplaced by a similar person or institution, is to dilute the full intention of the settlor. Indeed, trustees may be driven from their post by actions they were designated to prevent or warn against. A good reason for a trustee to resign is a good reason to replace his kind. To allow a trustee to remain and another to resign, under the circumstances here, is to dissolve the full intention of the testator and leave the trust in hands not intended. As the Superior Court noted, "the bank's presence as a trustee is clearly more beneficial to the trust than Raymond's continuing as a trustee." *In Re White*, 321 Pa.Super. 102, 111, 467 A.2d 1148, 1153 (1983).

I would affirm the decision of the Superior Court.

NIX, C.J., joins this dissenting opinion.

228

HUTCHINSON, Justice, concurring and dissenting.

I agree with Mr. Justice McDermott's view that the corporate fiduciary should not have been removed. However, with respect to the removal of the individual trustee, Mr. White, I am constrained to join the majority.